In the Matter of the P. B. MATHIASON MANUFAC-
TURING COMPANY, HANSON et al., Respond-
ents, v. MATHIASON et al., Appellants.

St. Louis Court of Appeals, January 22, 1907.

1. **Corporations: Election of Directors: Notice.** At an election of the directors of a corporation, where all the stockholders were present at the meeting in person or by proxy, none of them could afterwards take advantage of any irregularity in the notice of the meeting as required by section 1320, Revised Statutes 1899.

2. ———: ———: **Ballot.** At an election of the directors of a corporation, where a ballot was cast naming certain candidates for directors, but failing to give the number of votes cast for each or the number of shares for which the votes were cast, the ballot was properly rejected in the count; the ignorance and inexperience of the proxy who cast the ballot was no ground for relief on the part of his principal.

3. ———: ———: ———. In an election of the directors of a corporation where one stockholder afterwards complained of its irregularity, the evidence is examined and held insufficient to prove the election was conducted unfairly so as to justify the court in setting it aside.

4. ———: ———: **Stockholders: One Share One Vote.** The common-law rule that stockholders in a corporation had each one vote is changed by section 1320, Revised Statutes of 1899, so that the share is the voting unit; on any business transacted by the stockholders each stockholder is entitled to one vote for every share held by him.

5. ———: ———: ———: ———. At a meeting of the stockholders of a corporation, held for the purpose of electing directors, after the ballots were cast and counted and the election of certain directors declared, a motion was made by a stockholder present to set aside the ballot and take another in the election of directors. *Held*, each stockholder present in person or by proxy was entitled to one vote for every share held by him on the motion, and where the motion, if votes had been so counted, would have prevailed, but was declared lost by counting one vote for each shareholder, the court, at the instance of a stockholder whose votes were not properly counted, should set aside the election.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel G. Taylor*, Judge.

REVERSED AND REMANDED (*with directions*).

*Charles Claflin Allen* and *John H. Holliday* for petitioners; *Johnson, Allen & Richards* of counsel.

(1) The ballot of Herman Lammers, Sr., was a correct ballot. It was improperly rejected by the inspectors of election. No form of ballot is prescribed by the statute. State ex rel. v. McGann, 64 Mo. App. 225; State ex rel. v. Thompson, 27 Mo. 369; Gregg v. Granby Co., 164 Mo. 616; Tomlin v. Bank, 52 Mo. App. 430; Constitution of Missouri, art. 12, sec. 6; Acts of 1903, p. 124; 1 Beach on Corporations, sec. 298; Phillips v. Wickham, 1 Paige 600. (2) The chairman of the meeting should have declared the motion of H. W. Lammers to re-ballot for three directors carried, because a majority of the stock of the company was represented by the vote in its favor. Constitution of Missouri, art. 12, sec. 6; Acts of 1903, p. 124; 2 Cook on Corporations (5 Ed.), sec. 609. In the matter of the alleged election of directors, see 40 Hun 172; Taylor v. Griswold, 2 Green 222; Comm. v. Dettwiller, 131 Pa. St. 635; Proctor Coal Co. v. Finley, 98 Ky. 405; 3 Clark & Marshall on Corporation, p. 2007. (3) The conduct of the defendants, and particularly of Jay R. Hanson, throughout the meet-

ing, demonstrates a determination and plan to take advantage of the inexperience of Herman Lammers, Sr., to enable the minority in interest to override the majority, and under all the circumstances of the case the election should be set aside in view of the broad powers conferred upon the court by section 989 of the Revised Statutes of Missouri, 1899. Railway v. Gracy, 126 Mo. 485; Haiden v. Lauffenburger, 157 Mo. 95; Tunis v. Railroad, 15 L. R. A. 665; People v. Railroad, 55 Barb. 344.

*S. T. G. Smith* for respondents.

(1) The ballot of Herman Lammers, Sr., was properly rejected. State ex rel. v. Thompson, 27 Mo. 365; Loubats v. LeRoy, 15 Abb. N. C. 17; People v. Pangburn, 3 N. Y. App. Div.; People v. Loomis, 8 Wend. 396; Cushing, Law and Prac. Leg. Assm., p. 40; R. S. 1899, sec. 1320; State ex rel. v. McGann, 64 Mo. App. 234; In re Excelsior Fire Ins. Co., 16 Abb. Pr. 14; Dulin v. Pac. Wood & Coal Co., 103 Cal. 357. (2) The meeting was properly called, or if not, all irregularities were waived. Bank v. Mathews, 85 Fed. 941; State ex rel. v. Cook, 178 Mo. 189; People v. Peck, 11 Wend. 604; Benbow v. Cook, 115 N. C. 324; Tompkins v. Sperry, Jones & Co., 96 Md. 560; Wienburgh v. U. S. Ry. Advertising Co., 55 N. J. Eq. 640; Stebbins v. Merritt, 64 Mass. 27; Handley v. Stutz, 139 U. S. 417; Kenton Furnace Co. v. McAlpin, 5 Fed. 737. (3) A vote by show of hands on any question except the election of directors or change of by-laws is final, unless a stock vote is called for. Weinburgh v. U. S. R. A. Co., 55 N. J. Eq. 547. (4) After the result of the vote was announced no change could be made in the ballots. Forsyth v. Brown, 13 Pa. Co. Ct. Rep. 576; State ex rel. v. McGann, 64 Mo. App. 225; Oldknow v. Wainwright, 2 Burrows 1017; Booker v. Young, 12 Grattan 303.

BLAND, P. J.—The P. B. Mathiason Manufacturing Company was incorporated under the laws of this State in 1896. Its home office and place of business is in the city of St. Louis, and its capital stock is one hundred thousand dollars, divided into one thousand shares of the par value of one hundred dollars per share. For a number of years prior to, and on September 3, 1905, the shares were owned as follows: P. B. Mathiason, 664 shares; Clarence Hanson, 152 shares; Jay R. Hanson, 163 shares; Stella B. Hanson, 16 shares; Violet Ford, 3 shares; Herman W. Lammers, 1 share; and Herman J. Lammers, 1 share. Clarence and Jay Hanson are brothers, Stella Hanson is the wife of Clarence, and Violet Ford is his sister-in-law. Mathiason's wife is the sister of Clarence and Jay Hanson. Before September 3, 1905, Mathiason had been president of the corporation from its organization, and being the owner of a majority of the stock, dominated the corporation, and the two Lammers acted with him. The articles of incorporation provide for three directors and for their election in September of each year. Mathiason, Clarence Hanson and Herman J. Lammers, prior to September 3, 1905, had for a number of years been elected and served as directors of the corporation. Mathiason is a resident of the State of California, having resided in that State for seventeen years prior to 1905, and drew a salary of five hundred dollars per month as president of the company. It appears the Hanson interest concluded to try to effect a change in the directorship and presidency of the corporation, at the election to be held September 3, 1905, by electing Jay Hanson as a director instead of Herman J. Lammers. The secretary of the corporation, in due time, sent out notices of the annual meeting, to be held on September 3, 1905, for the election of directors, one of which was mailed to and received by Mathiason at Los Angeles, California, in ample time for him to have come to St. Louis to attend the meeting. Anticipating, for bus-

iness reasons, he would not be able to attend the meeting
in person, Mathiason executed, in due form, his proxy
to Herman J. Lammers, authorizing him to vote his full
shares of stock at the September election, and instruct-
ed him by letter to vote for the old directors, consisting
of himself, Clarence Hanson and Herman J. Lammers.
The proxy was received before the day of the election.
On the day of the election, a letter from Mathiason to
Herman W. Lammers was read, and also a telegram pro-
duced, asking that the annual meeting be postponed or
continued to the tenth of September, at which time
Mathiason said he would be present to attend the meet-
ing. No action was taken on the letter and telegram, as
no motion was made by any one to adjourn or continue
the meeting. All the stockholders, except Mathiason
and Violet Ford were present and met in the office of
the company about nine a. m. and organized in an
informal manner, by selecting Clarence Hanson as chair-
man of the meeting and Herman W. Lammers as secre-
tary. The chairman announced the meeting would be
held in regular form, and that the election for directors
would be by ballot. No objections were offered to this
manner of proceeding, and the chairman appointed Jay
and Stella Hanson as inspectors of election, who were
duly sworn as the law directs. A list of the stockholders
and the number of shares owned by each was taken
from the books of the company, and an open box placed
upon the table at which the inspectors sat, for the pur-
pose of receiving ballots. Jay Hanson held the proxy
of Violet Ford, so all the stock of the company was rep-
resented at the meeting, either by the stockholders being
present in person or by proxy. Each voter prepared his
own ballot and deposited it in the box. Herman W.
Lammers prepared his ballot as follows: P. B. Mathia-
son, 1; C. T. Hanson, 1; Herman J. Lammers, 1; and
dropped it in the ballot-box. Herman J. Lammers took
this ballot from the box, read it and returned it to the

box, and thereupon wrote this ballot as follows: P. B. Mathiason, C. T. Hanson, H. J. Lammers, and deposited it in the box. After the stockholders present had all deposited their ballot, the chairman declared the polls closed and the inspectors took the ballots from the box, cast them up, verified the count and announced the result as follows: Jay R. Hanson, 335 votes; C. T. Hanson 668 votes; P. B. Mathiason 1 vote and Herman J. Lammers 1 vote, and passed their tally sheet to the chairman.

Herman J. Lammers testified that before the meeting was organized, Jay Hanson asked him if they should leave Mathiason out, and he told him, "No;" that Mathiason had instructed him to vote for the same old directors; that he knew nothing about the election, had never attended one before where a ballot was taken, and did not know how to make out his ballot; that his son, Herman W. Lammers, said he had not voted right; that he then told the meeting he was not satisfied, that they knew what he wanted, and said, "I want my rights, if you want to take advantage of me that way, I will not have anything to do with you any more," and left the room, but came back in a moment; that at all prior meetings for the election of directors, they would meet around a table and agree orally as to who should be the directors; that some one would say, "The same directors again," and everybody agreed to it. Witnesss also testified that when the inspectors took out his ballot, they asked whose it was and he told them it was his and that he wanted to vote for Mathiason, and said, "You know I want to vote for the doctor (Mathiason); that they did not tell him to put the numbers of his votes on the ballot, but did not refuse to let him do so. His vote was not counted, and the chairman announced the result as found by the inspectors and declared himself and Jay Hanson elected, and that there was a tie vote for the third director. Thereupon Herman W. Lammers moved

to set aside the ballot that had been taken and take another for the election of three directors. This motion was put to the meeting, each member being accorded one vote. H. J. and H. W. Lammers voted for it and the other three stockholders present voted against it, therefore, the motion was declared lost. The motion to take a ballot for the election of a third director was put in the same manner and carried by the three Hansons voting in the affirmative. The ballot was taken and resulted in the election of Mathiason. A meeting of the new directors was immediately held, at which the new board was organized by electing Clarence Hanson as president and re-electing H. W. Lammers as secretary. The evidence of H. J. Lammers is corroborated by that of his son H. W. Lammers. On the part of respondents, the evidence tends to show that when H. J. Lammers' ballot was taken out of the box, he was asked by Jay Hanson how many votes he intended to cast; that he got excited and said he did not want anything more to do with the election, and left the room, but came back quickly and said to Jay Hanson, "You are not treating me fair," whereupon Jay Hanson told him to put down the number of votes on his ballot, and being excited he did not do it. After the announcement of the result of the election, H. W. Lammers said his father should have the privilege of changing his vote. No written report was made and signed by the inspectors and returned to the board of directors. Jay Hanson wrote up the minutes of the meeting on the minute book of the board of directors. The secretary of the board, however, refused to sign the minutes for the reason, as he stated, they were not correct.

1. The proceeding is brought under section 958, Revised Statutes 1899, and has for its object the setting aside of the election and the procurement of an order of the circuit court for a new election. On the hearing the issues were found for respondents and the petitioners

appealed. Section 1320, Revised Statutes 1899, as amended by an act of the Legislature, approved March 24, 1903, (Laws of 1903, p. 124) provides that the election of directors of manufacturing and business corporations shall be by ballot and the shareholders shall be entitled to one vote on each share of stock, and when there is more than one candidate, the shareholder may cast the whole number of his votes for one candidate or distribute them between two or more candidates. No form of ballot is prescribed. The section further provides that "at least two weeks' notice of the election shall be published in some newspaper printed at least once a week, in the city or county where the corporation is located," etc. No such notice was published of the election. But as all the stockholders were present at the meeting, in person or by proxy, they are in no position to take advantage of the irregularity in failing to publish the notice of the meeting. [Jones v. Milton, and Rushville Turnpike Co., 7 Ind. l. c. 548; Columbia Nat. Bank v. Mathews, 85 Fed. l. c. 941; Kenton Furnace Railroad & Mfg. Co. v. McAlpin, 5 Fed. 737; State ex rel. v. Cook, 178 Mo. 189, 77 S. W. 559.]

The term "ballot" primarily signified "a little ball." As used in the statutes providing for the election of public officers, or officers of a corporation, when required to be elected by ballot, it means "a paper so prepared by printing or writing thereon as to show the voter's choice." [State ex. rel. Runge v. Anderson, 100 Wis. l. c. 530; State v. Timothy, 147 Mo. l. c. 535, 49 S. W. 499.] Therefore, it was H. J. Lammers' privilege, when he prepared his ballot, to write thereon the names of the person or persons for whom he voted, and the number of votes he wished to cast for each individual voted for. [Gregg v. Granby Mining and Smelting Co., 164 Mo. 616, 65 S. W. 312; Tomlin v. The Farmers and Merchants Bank, 52 Mo. App. l. c. 436.] In no other way could the inspectors of the election determine the num-

ber of votes Lammers cast for any individual, hence his failure to note the number of votes cast opposite the names of the persons for whom he voted for directors, destroyed the efficacy of his ballot. This was his own fault, and neither he nor his principal, Mathiason, can set up his ignorance or inexperience as an excuse for his failure to vote as he had been instructed by Mathiason, for the latter is as much bound by the error or mistake of Lammers, his proxy, as if he had been present and himself committed the error. [Mobile & Ohio R. R. Co. v. Nicholas, 98 Ala. 92; Bank v. Mathews, supra.]

2. Should the meeting have permitted Lammers to correct his ballot by writing the number of votes opposite the names of the persons he attempted to vote for? There is no evidence showing that he made a request to do this. What does appear from the evidence is that Lammers thought because Jay Hanson knew he intended to vote the whole number of votes to which he was entitled, for the persons named on his ballot; Hanson, as an inspector of the election, should have counted for each the number of votes he was entitled to cast in his individual right and as proxy for Mathiason. On the other hand, respondent's evidence tends to show that Lammers was offered the opportunity to correct, or rather complete, his ballot, but became excited and would not do so. In this State of the evidence, we are not prepared to say that Lammers was treated so unfairly as to justify the court to set aside the election and order a new one.

3. The next question to be noticed is, should the motion of H. W. Lammers, to set aside the election or first ballot and take a new ballot for three directors, have been voted upon by counting the number of shares of each voter, or by a rising vote and count by the head, as was done. Neither of the Lammers objected to the manner in which the vote was taken, the counting made

or the result announced by the chairman. But we do not think their failure to object was a waiver of their right to have a proper and legal count of their votes on the motion, and if the share and not the individual shareholder is the voting unit, then the motion prevailed and the election was set aside and a new ballot should have been taken. In respect to the election of directors, this question is settled by section 1320, supra, which makes the share the unit of election. [Gregg v. Granby Mining and Smelting Co., 164 Mo. 1. c. 625.]

Cook, in his volume 2 of his work on Corporations (5 Ed.), sec. 609 says:

"At common law, in public or municipal corporations, each qualified elector has one vote, and only one. This was a natural rule, since each duly-qualified citizen voted as a citizen and not as the holder of stock. But the same rule should not apply to private corporations. Stockholders are interested not equally, but in proportion to the number of shares held by them. Naturally and reasonably each share should be entitled to one vote. It has been held, however, that at common law each stockholder had but one vote, irrespective of the number of shares held by him. Where the statutes are silent on the subject, a by-law may give to each shareholder one vote for each share up to ten, and may fix the proportion of votes which he may cast in excess of that number.

"Generally the charter or statutes prescribe that each share of stock shall be entitled to one vote. And a statutory or charter provision to this effect applies not only to elections, but also to all other questions that may come before the stockholders' meetings. An election to be held by a 'majority of stockholders' means a majority in interest."

Clark and Marshall in volume 3 of their work on Private Corporations, sec. 654, pp. 2006-7, say:

"At common law, since the members of a corpor-

ation were entitled to equal rights, each member was entitled to one vote, and no more, and this is still the rule in the case of non-stock corporations. And it has been held that the rule also applies to corporations having a capital stock divided into shares, and that, in the absence of express provision to the contrary, a stockholder has only one vote, however many shares he may own, and not a vote for each share. It is generally expressly provided, however, by statute or by by-laws, that stockholders shall have one vote for each share held by them.

"Even in the absence of an express provision, the soundness of the view limiting stockholders to a single vote, however many shares they may own, is very doubtful. The common-law rule was adopted with respect to public corporations and private corporations not having a capital stock, and at a time when joint-stock corporations were unknown, and was based upon the ground that all the members of a corporation, since they were equally interested, were entitled to an equal voice in its affairs. The rules of the common law change as conditions change, and by the application of common-law principles to new conditions, new common-law rules arise. It follows that a common-law rule, adopted with reference to non-stock corporations, in which all the members were equally interested, giving each member a single vote, cannot properly be applied to a new kind of corporation, not known at the time the rule was adopted, in which some members have a greater interest than others. *Cessante ratione, cessat et ipsa lex.* On the contrary, the principle of the common-law that each member of a corporation, in which each has an equal interest, is entitled to an equal vote, if logically applied to the new kind of corporations—joint-stock corporations—will give to stockholders a vote for each share. Even aside from this view, the common usage in giving a vote for each share would seem to be sufficient ground

for implying an intention on the part of the Legislature, in the absence of express provision, to give each share a vote."

In re Rochester District Telegraph Company, 40 Hun (N. Y.) 172, "at the annual meeting of the stockholders of a telegraph company, formed under chapter 265 of 1848, an injunction was served upon the president and others restraining them from voting upon 2,560 shares of stock recently issued by the board of directors. A motion to adjourn received the affirmative vote of seven stockholders present and holding 1,724 of the original shares, and the negative vote of five stockholders present and holding 4,275 of said shares. The seven stockholders having left the room the five stockholders elected a board of directors. Neither the certificate of incorporation nor the by-laws made any provision as to the manner of voting at stockholders' meetings. *Held*, that the matter was regulated by section 6 of 2 Revised Statutes (7 Ed.), 1535, by which each stockholder was entitled to one vote for each share of stock held by him. That a motion by the dissenting stockholders to vacate the election was properly denied."

In Proctor Coal Company v. Finley, 98 Ky. 405, the court held: "It is competent for a business corporation to provide through a by-law that 'at stockholders' meetings each stockholder shall cast one vote for each share of stock owned by him,' unless such a method of voting is in conflict with the charter or with some general law on the subject. And such a by-law applies to the election of a chairman as well as to the proceedings after the meeting has been regularly organized. And the fact that at previous meetings the chairman had without objection been selected by a count by the head can not affect the question as to the legal method of voting when the question is made for the first time."

In the absence of any statute, charter, provision or by-law, it is fair and just, that in a meeting of the stock-

holders of a private business corporation, on all questions in regard to the management of the corporation, or of its business policies, a share should be the voting unit, and we think this proportion is supported by the weight of authority and is the common practice of this class of corporations. In respect to the election of directors, it is the declared policy of this State. [Section 1320, supra.] The motion, to set aside the somewhat abortive ballot and to take another ballot for three directors, was made at a meeting called for the express purpose of electing a board of directors, and was germane to the purpose for which the meeting had assembled, therefore the vote should have been counted, not by the head but by the share. Had it been so counted it would have carried, as the affirmative received six hundred and sixty-six votes, counted by the share, a clear majority of all the capital stock of the company. The motion, therefore, was carried, and the ballot by which Clarence and Jay Hanson were declared elected was set aside, hence there was a failure to legally elect at least two of the three directors of the corporation. The corporation elects its directors annually, and it is presumed that a new set of directors was elected in September, 1906, hence it is too late to make an order for a new election for directors to serve for the year 1906. But as the petitioners should have prevailed in the circuit court, the judgment will be reversed and the cause remanded, with directions to the circuit court to enter judgment for the petitioners for the recovery of the costs which accrued in said circuit court. All concur.