HENRI BOUREE and ADOPLHE DE CHAZOULIERE,

*vs.*

TRUST FRANCAIS DES ACTIONS DE LA FRANCO-WYOMING OIL COMPANY, a corporation created by and existing under the laws of the Republic of France, the defendant Company, and FRANCO-WYOMING OIL COMPANY, a corporation of the State of Delaware.

*New Castle, Nov. 27, 1924.*

Though petition for leave to intervene as party defendant must show petitioner has an interest and a defense not frivolous, it need not be accompanied by a sworn answer when time for answering has not arrived.

Averments of petition for leave to intervene must on hearing thereon be taken as true.

In suit to enjoin corporation nominally holding stock for others, from voting such stock, brought by stockholders who had no interest in the greater part of stock so held, *held* other stockholders had sufficient interest to intervene and defend; corporation having neglected or failed to do so.

Owner of corporate stock is an indispensable party to suit to enjoin voting of such stock at stockholders' meeting.

All pertinent constitutional and statutory provisions of State are written into charters of domestic corporations.

In suits *in rem* or *quasi in rem*, courts of state within which *res* is situated have full power to administer all relief necessary to assertion of their appropriate jurisdiction.

It was within power of State to enact *Revised Code* 1915, § 1986, declaring situs of stock of domestic corporations to be within State, for stated purposes, and to make such applicable as well to stockholders as to corporation itself.

Under *Revised Code* 1915, § 1986, declaring situs of corprate stock, and *Revised Code* 1915, §§ 3850, 3856, which authorizes substituted service, nonresident owners of stock in domestic corporation may be brought constructively before State court in suit to restrain it from voting such stock, and court has jurisdiction to enter such injunction on proper showing.

In determining whether French corporation holding legal title to corporate stock, beneficial interest of which is in another, has corporate power to vote such stock, law of that jurisdiction controls.

What law of a foreign country may be is question of fact.

Corporate power to hold corporate stock includes incidental power to vote it.

In absence of showing to contrary, law of foreign country is presumed same as here.

Though trusts may not be recognized by French law, a trust created in France with respect to property in this State, naming as trustee a French citizen, would be recognized by courts of this State; law of forum being controlling.

Though trusts may not be recognized in France, a showing that French law permits one person to hold bare legal title to stock and another to hold beneficial interest, and permits such persons to contract as to who shall vote it, warrants denial of preliminary injunction restraining French corporation from voting stock to which it holds bare legal title, on theory that it would be acting as a trustee in *ultra vires* capacity.

BILL FOR INJUNCTION. The defendant, Franco-Wyoming Oil Company, is a corporation of this State. In order to facilitate trading in its shares of stock on the French Stock Exchange, the defendant, Trust Francais des Actions de la Franco-Wyoming Oil Company, was organized under the laws of the Republic of France with a capital of one thousand shares of the par value of one hundred francs each. The Trust Francais receives registered shares of stock of the Franco-Wyoming Oil Company and in exchange therefor delivers to the persons entitled thereto its own so-called bearer certificates evidencing the fact that the designated number of shares of stock of the Franco-Wyoming Oil Company have been deposited with it. These bearer certificates are traded in on the French Stock Exchange.

The contract between the Trust Francais and the holders of its bearer certificates provides that the certificate holder may at

any time surrender the same and receive in exchange therefor an equivalent number of registered shares of the Franco-Wyoming Oil Company. The bill discloses that the holders of bearer certificates are entitled to receive from the Trust Francais proxies enabling such holders to vote the shares of stock of Franco-Wyoming Oil Company at stockholders' meetings of said company in the amount represented by their bearer certificates.

The complainant, Henri Bouree, is the owner of one hundred and thirty shares of stock of the Franco-Wyoming Oil Company and twenty-seven hundred and fifty shares represented by bearer certificates issued to him by the Trust Francais. The complainant, Adolphe de Chazouliere, is the owner of five shares of stock of the Franco-Wyoming Oil Company and one hundred shares represented by bearer certificates issued to him by the Trust Francais.

The bill charges that the annual meeting of stockholders of Franco-Wyoming Oil Company is to be held on the twenty-fifth day of October of the present year at Cheyenne, Wyoming; that those controlling the Trust Francais have declared it to be their purpose to vote the shares of stock which had been deposited with it in exchange for bearer certificates and which were standing in the name of the Trust Francais on the books of the Franco-Wyoming Oil Company adversely to the re-election of the present board of directors of the Franco-Wyoming Oil Company. The bill further charges that it is the purpose of the persons controlling the Trust Francais to vote a sufficient number of the shares of stock of the Franco-Wyoming Oil Company, standing in its name, to authorize a sale and disposition of the assets of the Franco-Wyoming Oil Company.

The prayer of the bill is that the Trust Francais may be restrained from voting, and the Franco-Wyoming Oil Company from receiving, accepting or permitting the votes of, the shares of stock standing in the name of the Trust Francais at the stockholders' meeting to be held on October 25, 1924, or at any other meeting; that a decree may be entered declaring that the Trust Francais is without power to hold any of the shares of stock of the Franco-Wyoming Oil Company; that the Trust Francais be required to transfer the shares of said Oil Company standing in its name to the holders of its bearer certificates, and in the event

that the Trust Francais should fail so to do, that this court should require the Franco-Wyoming Oil Company to cancel the certificates of stock standing in the name of the Trust Francais and issue to the holders of said bearer certificates a number of shares of stock equal to the number of shares of stock represented by said bearer certificates.

Upon the filing of the bill on October 20, 1924, a rule was ordered requiring the defendants to show cause why a preliminary injunction should not issue in accordance with the prayers of the bill, the hearing on which has been postponed from time to time until November 21, 1924. Pending the hearing on the rule for preliminary injunction a restraining order was issued to restrain the Trust Francais from voting the shares of stock of Franco-Wyoming Oil Company and the acceptance of such votes by the Franco-Wyoming Oil Company.

The defendant, Franco-Wyoming Oil Company, has been duly served with process, but it has not entered an appearance. The Trust Francais is beyond the jurisdiction of the court and has not voluntarily appeared.

Henri A. de Compiegne, a citizen of France, has filed a petition asking leave to intervene for the purpose of defending the suit. His petition represents that he is the owner of one thousand shares of stock of Franco-Wyoming Oil Company. If he holds any bearer certificates issued by the Trust Francais, his petition does not so state. He further shows that out of a total of five hundred thousand shares of the Franco-Wyoming Oil Company, the Trust Francais is the registered holder of 488,408 shares. It is unnecessary to set out in detail the allegations of fact made in his petition. It charges that the Franco-Wyoming Oil Company does not propose to appear and defend the suit and that the Trust Francais being a French coporation is beyond the jurisdiction of the court. He, therefore, prays that he may be permitted to intervene in the cause as a party defendant. The petition is opposed by the complainants.

*Caleb S. Layton*, of Marvel, Marvel, Layton and Hughes, and *Frederic R. Coudert*, of New York City, for the complainants.

*Andrew C. Gray*, of Ward, Gray and Neary, and *Alexander B. Seigel*, of New York City, for the petitioner.

THE CHANCELLOR.   The complainants' opposition to the petition for leave to intervene as a party defendant in this cause is based on two grounds.

First.   The contention under this head is that the proper practice requires the petitioner to present a sworn answer with his petition for leave to intervene.   No authority is cited in support of this contention.   In this case time for answering under the rule has not yet arrived, and it would appear to be unreasonable to require one who desired to be made a party defendant to present his answer at a time earlier than under the rules he would be required to do if he had been made a party defendant originally.   It is clear that the petition for leave to intervene must show such facts as disclose that the petitioner has an interest in the litigation and that the defense which he desires to set up is a substantial one and not frivolous.   *Atlantic Refining Co. v. Port Lobos Petroleum Corp.*, (*D. C.*) 280 *Fed.* 934.   But that such defense must be disclosed to the court in the form of a sworn answer accompanying the petition does not seem to me to be tenable when the answer date has not yet arrived.   Whether a different rule should prevail after that date it is unnecessary to determine.

Second.   The other point raised against the petition is that it fails to disclose an interest on the part of the petitioner in the controversy.   What is the controversy?   Quoting from the complainants' memorandum, "the only matter in controversy in this cause is the right of the Trust Francais to vote the shares of stock standing in its name on the books of the Franco-Wyoming Oil Company."   The pending petition (whose well pleaded averments are to be taken as true, *Atlantic Refining Co. v. Port Lobos, etc., Corp., supra,*) states that the Trust Francais is the record holder of 488,-408 shares out of a total of 500,000 shares of Franco-Wyoming Oil Company stock.   The complainants together hold in their names 135 shares of the Franco-Wyoming stock and bearer certificates issued by the Trust Francais in the total amount of 2,850 shares. They allege further that through their relatives, friends and associates they control upwards of 40,000 shares of the Franco-Wyoming Oil Company's stock, either through registered shares or through bearer certificates issued by the Trust Francais.   The petitioner shows by his petition that he is the record owner of

1,000 shares of stock of the Franco-Wyoming Oil Company, and states that he and his associates who are dissatisfied with the management of the company number 130,000 shares.

It is to be observed that the complainants do not seek to restrain the Trust Francais from voting only the 2,850 shares for which they hold its bearer certificates. They seek to restrain it from voting not only those shares, but all the rest of the 488,408 shares standing in its name and against which bearer certificates are outstanding in the hands of other persons.

I understand it to be the contention of the complainants that the controversy between the complainants and the Trust Francais as to whether the latter has a right to hold and vote the stock standing in its name at stockholders' meetings can be of no possible interest to the petitioner because (illustrating the contention) if stockholder A. is in a controversy with stockholder B., it is of no concern to stockholder C. Generally speaking, this is doubtless true and in such supposed case stockholder C. would ordinarily have no right to inject himself into the controversy. If, for instance, A. claims stock standing in the name of B. and seeks by suit to secure it and to restrain B. pending the litigation from voting or transferring it, another stockholder who makes no claim to the stock has no such litigable interest in the controversy as would entitle him to intervene. But such is not this case.

Here it seems is a controversy over control of the Franco-Wyoming Oil Company. The complainants are directors and anticipate being voted out of office by the shares held by the Trust Francais. They as stockholders file a bill seeking to enjoin the Trust Francais from voting any and all shares held by it, not because they claim to own the shares or to have any interest whatever in them (excepting of course the negligible number of 2,850) but because other people, strangers to them, have, as the complainants claim, assumed unlawfully to place title to their shares in the Trust Francais. Now if the petitioner, a stockholder of the Franco-Wyoming Oil Company, has no litigable interest in the question of whether the Trust Francais is entitled to vote its shares, I am at a loss to see how the complainants can have any. The situation is that the complainants seek to enjoin the Trust Francais from voting 485,558 shares (the total standing in its

name less the 2,850 shares represented by the complainants' bearer certificates) held by it for other stockholders, and when another stockholder, situated exactly as are the complainants, seeks to come in and controvert the position of the complainants he is met with the objection that he has no interest in the litigation.

As to all of the shares in the name of the Trust Francais, other than the 2,850 shares represented by the bearer certificates held by the complainants, it would seem that the only particular in which the complainants can be concerned therewith is that the shares are proposed to be voted at a stockholders' meeting and that thereby the result of the meeting may possibly be determined. If this is a question which directly touches the interests of the complainants, why does it not touch in equal degree and in exactly the same manner the interests of the petitioners? It may be that it is of no litigable interest to either. This, however, I do not now decide for I suppose this to be one of the principal questions to be determined later in the litigation. For the present it is sufficient to observe that if the complainants are on safe ground in maintaining as they do by their bill that they may silence the voice of the Trust Francais in the affairs of the corporation, any other stockholder ought in reason to be allowed to meet the complainants on that ground and be allowed to contend against them in favor of allowing the Trust Francais to be heard, the corporation itself either neglecting or refusing to appear. It does not seem to me to make any difference whether the right of one who thus seeks to controvert the question be characterized as the individual right of the stockholder or as a derivative one coming to him from the corporation. I, therefore, do not dwell upon this aspect of the argument which was discussed by the solicitor for the complainants.

Leave to intervene as requested will be granted. My disposition of the application is based solely on this point of view, that the complainants who desire to deny the right of the shares held by the Trust Francais to vote are no more interested in the denial of that right than is the petitioner in its assertion. If the bill confined itself to attacking the right of the Trust Francais to vote only the 2,850 shares deposited with it by the complainants, the present application would appear in a different light. But

where the complainants go further and seek to restrain the voting of other shares in which they have no interest peculiar to themselves, and in which every other stockholder is interested at least as fully as are they, the complainants do not appear to me to be in a position that enables them to object to the intervention of such other stockholder.

Let the ultimate disposition be what it may of the main question, viz., whether any stockholder, circumstanced as are the complainants and the petitioner, may properly invoke the aid of this court to interfere with the right of the shares of the Trust Francais to vote, so long as the complainants are in court seeking to destroy that right the petitioner or any other stockholder has as good a right to come in and seek to sustain it. The equity, if any, which would allow the complainants to invoke the aid of this court will allow the defendant to come in by way of intervention to oppose it. If the corporation itself were to appear and make *bona fide* defense, the matter might present itself in a different light.

RULE FOR PRELIMINARY INJUNCTION. The petitioner duly intervened and filed affidavits in opposition to the rule to show cause why a preliminary injunction should not issue restraining the voting of the shares of stock standing in the name of the Trust Francais as prayed in the bill. The rule came on to be heard on Friday, November 21, on bill and affidavits and on November 27 the Chancellor rendered his decision. The opinion filed by him is as follows:

THE CHANCELLOR. The question of whether either the complainants or the intervenor have any litigable interest in the controversy over the right of the Trust Francais to vote, a question which I before stated I supposed to be one of the principal ones for later determination, is not raised. The complaining stockholders do not of course raise it and the intervening stockholder who defends removes the question from the case by his concession. I accordingly say nothing upon the point.

On the question of whether the preliminary injunction should issue, three subjects for discussion have been presented, and my views with respect thereto are as follows:

(a) It is contended that this court is without jurisdiction over the Trust Francais, a foreign corporation, which has not been and cannot be served with process, and which has not voluntarily appeared; that it is an indispensable party to any relief which is directed against its right to vote the stock standing in its name, and inasmuch as the court cannot secure its presence the injunctive relief which so vitally touches its rights ought to be denied. Two cases, *General Investment Co. v. Lake Shore Ry. Co.*, 260 U. S. 261, 43 *Sup. Ct.* 106, 67 *L. Ed.* 244, and *Talbot J. Taylor & Co. v. Southern Pacific Co.*, (*C. C.*) 122 *Fed.* 147, are relied on in support of this contention. These cases hold that an injunction will not issue interfering with the right of corporate stock to vote at a stockholders' meeting unless the owner of the stock, an indispensable party, is before the court. The suit in the *General Investment Co. Case* was to restrain a proposed consolidation of certain railroads as in contravention of the *Sherman Anti-Trust Act* (*U. S. Comp. St.* § 8820 *et seq.*) and the *Clayton Act* (38 *Stat.* 730). The New York Central Company was named as a defendant. It owned stock in the Lake Shore Company, another one of the defendants. The court held that an injunction could not issue against it restraining it from voting its Lake Shore stock because it was an indispensable party, and "that with it neither appearing nor reached by any effective process no other course was open than to dismiss that part of the bill." Personal service could not be made upon it, nor could "effective process" of which the court spoke reach it otherwise, under *Section* 57 of the *Judicial Code* (*U. S. Comp. St.* § 1039) which provides for substituted service upon persons not inhabitants of or found within the district of suit. This was because the suit was not of the kind falling within the contemplation of the section, it being brought neither to enforce a claim or lien upon specific property, nor to cancel an incumbrance or lien thereon, nor to remove a cloud upon the title. It is not to be doubted that if the suit had been such as to fall within the category of cases covered by *Section* 57 then substituted service could have been had upon the New York Central Company, "effective process" would have reached it and the injunction could then have very properly issued. As I shall show later our statutes provide for such "effective process" in cases of the in-

stant kind and therefore the case just commented upon is not an authority opposed to the exercise by this court of its injunctive power against the Trust Francias. That it is an indispensable party is unquestioned. It is made a party and as will later appear it can be brought into court by effective process.

The other case relied on by the intervenor from 122 *Fed.* 147, I need not comment on in detail. This very pertinent sentence appears in the opinion:

"It must be accepted as altogether fundamental that no court can adjudicate upon the rights or interests of one who is neither actually nor constructively before the court."

In that case, it was held that the defendant, the Union Pacific R. R. Company, was neither actually nor constructively before the court, and accordingly there was no power in the court to enjoin it from voting stock held by it in the Southern Pacific Company, which company the bill charged the Union Pacific Company with controlling in its own interests and against the interests of the stockholders generally. There is nothing in the report which indicates that if such a state of statutory law governed the facts of that case as governs this, the court would have adhered to its conclusion that it was without authority to issue the injunction.

I now proceed to call attention to the statutory provisions of this State pertinent to the aspect of the case now under discussion. In the first place it should be borne in mind that the Franco-Wyoming Oil Company is a corporate creature of this State. Into its corporate charter is written every pertinent provision of our Constitution and statutes. *Peters v. U. S. Mortgage Co.*, 13 *Del. Ch.* 11, 114 *Atl.* 598; *Morris v. American Public Utilities Co.*, ante p. 136. The act under which the Franco-Wyoming Oil Company was created provides in one of its sections as follows:

"*Section 72. Situs of Ownership of Capital Stock:*—For all purposes of title, action, attachment, garnishment and jurisdiction of all courts held in this state, but not for the purpose of taxation, the situs of the ownership of the capital stock of all corporations existing under the laws of this State, whether organized under this chapter or otherwise, shall be regarded as in this State." *Revised Code* 1915, *c.* 65.

When the Trust Francais, a foreign corporation, acquired title to the stock of the Franco-Wyoming Oil Company which stands in its name, it therefore became possessed of property which by express language of the act under which the stock was created and issued is in legal contemplation located in this State. While the Trust Francais is a non-resident of Delaware, yet it holds shares of stock located in this jurisdiction. Its stock was as certainly posited in this State as are the land and tangible chattels which are physically located here. No stockholder who accepts stock in a Delaware corporation can be heard to deny its Delaware situs.

We have then the case of a non-resident defendant holding property which, by virtue of the law authorizing the existence of the property, is located in this State "for all purposes of title, action, * * * and jurisdiction of all courts," and the suggestion is made that the courts of this State are powerless to render any effective decree touching this property in a suit which seeks appropriate relief with respect thereto. In suits *in rem*, or *quasi in rem*, courts of the State within whose boundaries the *res* is situated have full power to administer all relief necessary to the assertion of their appropriate jurisdiction. A provision in the *Corporation Act of New Jersey* (*Laws* 1896, *c.* 185) similar to that found in our *Section* 72 has been before the courts of that State for consideration; and it appears to have become well settled in that jurisdiction that the fact that the owner of the stock of a New Jersey corporation is beyond the reach of New Jersey personal process cannot prevent the courts of that State from entering decrees *quasi in rem* with respect to such stock. *Andrews v. Guayaquil, etc., Co.*, 69 *N. J. Eq.*, 211, 60 *Atl.* 568, affirmed in 71 *N. J. Eq.* 768, 71 *Atl.* 1133; *Sohege v. Singer Mtg. Co.*, 73 *N. J. Eq.* 567, 68 *Atl.* 64; *Amparo v. Fidelity Trust Co.*, 74 *N. J. Eq.* 197, 71 *Atl.* 605. See, also, the case of *Hook v. Hoffman*, in the Supreme Court of Arizona, 16 *Ariz.* 540, 147 *Pac.* 722. In our own State the same principle appears to have been recognized in *Ellis v. Penn Beef Co.*, 9 *Del. Ch.* 213, 80 *Atl.* 666. That it is within the legitimate power of a state to enact such provisions as our own *Section* 72 and make them binding not alone on the corporate creature but as well upon its members or stockholders is especially recognized by the

Supreme Court of the United States in *Pennoyer v. Neff*, 95 *U. S.* 714, 24 *L. Ed.* 565, where the following is found:

"Nor do we doubt that a state, on creating corporations or other institutions for pecuniary or charitable purposes, may provide a mode in which their conduct may be investigated, their obligations enforced, or their charters revoked, which shall require other than personal service upon their officers or members. Parties becoming members of such corporations or institutions would hold their interest subject to the conditions prescribed by law."

The language of *Section* 72 is very broad. It fixes the situs of stock of Delaware corporations in Delaware for almost every conceivable purpose except that of taxation. While personal service of process cannot be had upon the defendant, the Trust Francais, yet, it being the holder of property thus located within this jurisdiction, substituted service by publication can be had upon it under the provisions of the *Code* herein below referred to. Such substituted service will satisfy all the requirements of "effective service" as I understand that phrase to be used by the Supreme Court of the United States in the case of *General Investment Co. v. Lake Shore R. Co.*, *supra*, and will bring the non-resident defendant "constructively before the court," which is amply sufficient as indicated by the court in *Talbot J. Taylor & Co. v. Southern Pacific Co.*, *supra*, to warrant the court in proceeding to administer relief.

The provisions of the *Code* to which I just referred are to be found in *Sections* 3850 and 3856, *Revised Code* 1915. The former section provides for the manner of notice to be given to non-resident defendants. The latter deals more precisely with the classes of cases in which service by publication may be had. How much broader this section is than the analogous *Section* 57 of the *Federal Judicial Code* hereinbefore referred to, will readily appear upon a mere cursory reading. The *Section* 3856 referred to is as follows:

"3856. *Section* 13. *Proof of Absence and Previous Residence Necessary; When; Exceptions:*—The preceding sections shall not warrant any proceeding against a person out of the State, without proof, by affidavit, that he had been a resident in the State within one year next before the subpœna issued in such suit, or unless the said process be returned duly served, or unless the suit is brought against a person out of the State for injunction to stay a suit at law, or to be relieved against a judgment, or proceedings, at law by any such person out of the State, or unless the said suit

shall be against a person seised, or in possession of any estate, real, or personal, within the State, or shall relate to, or concern, or affect, any such estate or property, rights, or credits, or any contracts made, or to be performed within the State."

In this view of the statutory law of this State as the same relates to corporations, their creation and the rules of their existence and to the service of process upon non-resident defendants, it seems clear that the Trust Francais, if it does not voluntarily appear in this suit, may nevertheless be made to suffer the consequences of any proper decree which may ultimately be rendered against it, provided, of course, it is constructively brought before the court in the manner provided by the provisions of the *Code* above referred to.

The present application is for a preliminary injunction. Notice thereof was given by registered mail in ample time for the Trust Francais to appear in opposition if it cared to do so. It being possible, as before stated, to bring it in eventually before the court, constructively at least, there is nothing improper in awarding a preliminary injunction at this stage, notwithstanding its absence, provided of course the facts are such as would on the present showing warrant it. Whether the facts are such as would justify issuing the injunction will after noticing the next point be considered.

(b) It is urged against the rule that the complainants are estopped from complaining against the voting of the stock by the Trust Francais because they have been directors of Franco-Wyoming Oil Company for the past ten years and have been uniformly elected as such by the stock standing in the name of the Trust Francais—the very stock they now seek to enjoin from voting.

I shall not dwell upon this contention for the reasons, first, that whatever the true fact may be it is doubtful if the affidavits on file sufficiently demonstrate it to be as the contention assumes, and, secondly, what follows is ample in itself to dispose of the present application against the complainants. A consideration of the question of estoppel is therefore not required.

(c) If I were to state all the facts applicable to the point raised under this head and discuss *in extenso* the affidavits filed by both sides and the reasons for the conclusion I draw from them,

this opinion would become too extended. The question in dispute under the present head is at the outset one of French law. The complainants contend that under the laws of France, the sovereign which created the Trust Francais, the latter has no power to hold and vote stock standing in its name, and that an attempt on its part to vote the Franco-Wyoming stock would therefore be wholly *ultra vires*. They argue that if this premise is supported by the affidavits, then it follows as a matter of the law of this forum that a proper case is presented for the issuance by this court of its restraining process directed against the alleged *ultra vires* voting by the Trust Francais. Whether, granting the premise to be true, our law would deduce the result for which the complainants contend I need not decide, because the affidavits fail to convince me that the premise necessary for its support does in fact exist.

In passing upon the question of whether the Trust Francais has any corporate power under the law of France to vote as well as to hold stock, the law of that jurisdiction of course is determinative. What the law of France touching the matter may be, is for this jurisdiction a question of fact. Accordingly affidavits made by French lawyers have been filed showing what that law is in its application to the present point.

The complainants contend in the first place that while under its articles of association and by-laws the Trust Francais has corporate power to hold stock in the Franco-Wyoming Oil Company, no power is conferred upon it to vote the stock so held by it. In answer to this it seems sufficient to say that under the law as we know it in this country, if a corporation has the power to hold stock (a power which the complainants concede to the Trust Francais) it has the incidental power to vote it, notwithstanding its certificate of incorporation confers no special power to that end. *Bigelow v. Calumet & Hecla Mining Co.*, 167 *Fed.* 721, 94 *C. C. A.* 13; *Toledo Traction, etc., Co. v. Smith,* (*D. C.*) 205 *Fed.* 643. Nothing appears in the affidavits to show that such is not also the rule in France. Accordingly it is assumed to be so. On the showing thus made, I conclude that the Trust Francais does have corporate power under its articles of association and by-laws to vote as well as to hold stock.

But it is further said that even if the Trust Francais has the

corporate power to hold and vote stock in the Franco-Wyoming
Oil Company, yet it cannot have such power with respect to the
488,408 shares deposited with and held by it, because the cir-
cumstances show that such a deposit constitutes a trust, and no
such thing as a trust, the separation of the equitable from the
legal title, is known under French law, and being unknown it can-
not be possible that the sovereign power of that Republic ever
granted to this corporation a power to act in such a trust capacity.
It follows, therefore, say the complainants, that even if it be
granted that the Trust Francais is not engaging in an *ultra vires*
activity in assuming to vote the stock, yet it clearly assumes to
engage in such activity when it presumes to perform the duties
of this office of trustee, unknown to the law of its sovereign creator,
whereby it undertakes to hold the legal title in itself in trust for
others who own the beneficial interest. It would seem clear be-
yond doubt that notwithstanding the French law may have no
legal concept corresponding to what we in this country know as a
trust, yet if such a trust were created in France with respect to
property located in this State and an individual French citizen
were named as the trustee, the trust would be recognized by the
courts of this State as fully existent and would be accordingly en-
forced against the property. In such case Delaware courts would
proceed in accordance with the law of the forum. But when a
French corporation appears in the role of trustee, a new question
then arises. It then becomes a question of the extent of the trus-
tee's corporate power. If so, is not the law of the sovereign creat-
ing it to be looked to and allowed the right of exclusive determina-
tion? If under the law, as it is disclosed by the affidavits to be, it
should be held that the Trust Francais has no corporate power to
act in the capacity it has assumed to act, then the interesting
question arises of what consequences will flow from such *ultra
vires* conduct in the jurisdiction where the property is located.

The case does not call for a consideration of this question
however, because, after a careful analysis of the affidavits which
deal with the state of the French law, I am fully persuaded of
this, viz., that whether the legal concept of a trust, as we know it,
has any place in French jurisprudence or not, nevertheless it does
appear that under French law it is entirely possible for two parties

to agree that one may hold stock in his name which really belongs to another and that the question of who should exercise the voting power of the stock may be determined by agreement between them. The affidavit of Mr. Raoul Rousset, former president of the Paris Bar, contains the following statement of view of the French law as applicable to the matter now under discussion:

"Now, when shares belong to one person having the bare legal title and another has the beneficial interest, or when a shareholder has placed his shares in pledge to a creditor, those interested are free to determine between themselves as they may please whether the right to vote at a stockholders' meeting shall belong to the holder of the bare legal title or to the holder of the beneficial interest, to the debtor or to the pledgee creditor."

There is nothing in the other affidavits which contradicts this statement. So that under the evidence I conclude that the arrangement by which the Trust Francais holds the stock and, in the absence of a demand for proxies from the holders of bearer certificates, may vote it, is an arrangement which falls within the legal concepts of French law. It matters not whether here it would amount to a trust or not. We are considering the question of whether the arrangement is such as is unknown to French law and therefore involves the exercise of a power which the corporation's creator never intended it to enjoy. Having seen that the evidence before me in the form of affidavits shows that the French law does as a matter of fact countenance as good and valid the sort of thing that this corporation undertook to do, the foundation upon which the conclusion of an *ultra vires* exercise of power is erected falls, and the conclusion with it.

Of course I do not assume to express any opinion of my own as to what is the law in France. I am treating the question solely as one of fact and am looking solely to the affidavits for its ascertainment.

Who may vote at a stockholders' meeting of a Delaware corporation is to be determined exclusively by the Delaware Constitution and statutes as the same are construed by its courts. All reference to French law in the foregoing opinion is to be justified only because of the desire of ascertaining the extent of the granted powers which the French sovereign is supposed to have intended its corporate creature to possess.

A preliminary injunction will therefore be denied, and the rule discharged.