The complainants must first establish their proposition that the ballots, a sample of which is given in the statement of facts, should have been counted straight instead of rejected as worthless. If they fail in this, their case is ended without regard to whatever disposition is made of the questions connected with the 45 shares of Williamson and the 54 shares of Mrs. Snodgrass.
Having established their right to have the 671 votes counted straight, the complainants will succeed in establishing their titles to office if they are allowed the benefit of Williamson's 45 shares. If they are allowed the benefit of those shares, the Snodgrass shares become unimportant. If they are not allowed the benefit of the Williamson shares, then the complainants except Chappel in order to succeed must defeat the defendants on the issue touching the Snodgrass shares. Whether the Snodgrass shares need to be considered is therefore dependent on the views adopted with respect to the other two points, viz., the rejected ballots and the Williamson shares.
I turn then to a consideration of those items of controversy and first take up the matter of the rejected ballots. Should they have been rejected and counted for naught? The ballots were deposited on the theory that cumulative voting was permissible. The judges of election took the view that such voting was not permissible in this corporation. In this, they were correct. While the Delaware statute allows the cumulating of votes, yet it is allowed only when the certificate of incorporation so provides. The certificate of this corporation contained no provision for cumulative voting and hence such voting was not permissible. From the evidence it appears that some controversy arose at the meeting upon this question of cumulative voting. The complainants claimed the right to vote in this manner because the laws of Pennsylvania allowed it. The judges of election insisted that the Delaware statute supplied the law for this Delaware corporation and that accordingly the complainants could not vote cumulatively. The judges insisted that the persons depositing the ballots should cast ballots in so-called straight form if they desired to vote straight. But the complainants or those voting for them insisted they were right in their contention as to the law and refused to submit other ballots. Thereupon the judges retired, proceeded to canvass the vote and rejected the ballots *Page 76 
in question, noting on each of them "Rejected under corporation laws of Deleware." The judges were undoubtedly right in refusing to count cumulatively the votes cast by these ballots. But were they justified in rejecting them entirely as void? I think not. It is to be noted that the statute does not define the form in which ballots shall be written. Any form, I take it, may be used which shows the intent of the voter. And I accede to the proposition that in discovering that intent the ballot itself must be looked to for the evidence thereof. Examining these ballots it unquestionably appears that the stockholder meant to vote his shares. At the outset the ballot states "I, the undersigned, hereby vote 150 shares of stock for the following named persons," etc. Then follow the names of the three complainants and Mr. McJunkin, whose title to office is undisputed. After each of the names appear figures. These figures are unexplained on the face of the ballots. Added up, their total equals seven times the number of shares voted. There being seven directors to be elected, the inference follows of course that the voter desired his votes to be cumulated on the four persons named allotting to each the respective number of votes appearing after each name. This was a clear voting of shares with a direction as to how they should be counted. The direction was in substance an instruction to the judges how to count the votes cast. If the instruction as to how to count was such as the law would not allow to be carried out, does it follow that the shares which the voter at the outset said he was voting should not be counted as voting at all? How that question can be answered in the affirmative I am unable to see. I look upon the body of the ballot as clearly showing an intent to vote for the four persons named and the figures at the right of the names as without any force or effect under the law. They are surplusage, amounting at the most to nothing more than this, that the voter requests the shares which he votes to be counted for his candidates to a greater extent than the law will permit. To say that because the judges cannot lawfully count the voted shares to the extent requested, they cannot count them to any extent whatever is to work an unjust disfranchisement of the shareholder based solely on his mistaken view as to how high the law allows his votes to be counted. Where the law allows of only one degree of strength to a share when it votes, and a voter, who unmistakably means to vote for certain named persons, indicates an impossible desire to have his shares credited with a greater strength than the law allows, it seems to me to be out of all reason to say that his shares shall be robbed of all their strength. Voting is one thing and counting the votes is another. In this case the holder of 150 shares could vote only 150 votes for each director named by him. If the greater figures at the right of each name are thought of as of voting significance they should have been ignored by the judges as of no legal moment. The count should have been made of the voting strength of the shares as defined by the law, and the voting strength of the shares as defined by the voter's mistaken views should have been ignored.
The cases cited by the defendants contain nothing in conflict with this conclusion. Where voting may be done in either of two ways, that is either straight or cumulatively, it is of course not permissible for a voter of a straight ballot to insist that he meant his vote to be cast cumulatively. He is held to the intent as shown by the ballot. Such were the cases of In re P. B. Mathiason Mfg. Co., 122 Mo. App. 437,99 S. W. 502, and Commonwealth v. Blatchford, 21 Pa. Dist. R. 453. And the converse of the proposition for which these cases stand would be true, namely, that, where the two ways of voting are possible, a voter who by his ballot shows an intent to vote cumulatively cannot have his ballot counted as straight. These cases hold, and correctly so, that a ballot where the law allows two meanings to be expressed cannot be given a meaning different from that which its face shows the voter to have intended. Similar to them in principle is the case of Loubat v. Le Roy, 15 Abb. N. C. (N. Y.) 1, where the question was involved of when the term of office of a director of a club commenced, whether from the date designated on the ballots or at an anterior date. It having been legally permissible for the voters at the election to name one date or the other, the court held that the date evidenced by the ballot itself could not be departed from. But where as here there is only one possible way of reading the count under the law, there can be no question of whether a ballot showing a legal intent of one kind may by extrinsic evidence be received as showing a legal intent of another kind. The question here is whether the ballots show an intent to vote the stock they purported to vote and if so whether they should be counted to the only extent the law will allow. I think they should have been so counted. The ballots in question therefore should have been counted as casting for the four men named 671 votes.
The next question in order for consideration is the right to vote of the 45 shares of Williamson. It is argued in the first place that these shares were transferred to him too late to be voted at the coming election. The pertinent statutory provision in this regard is found in section 29 of the General Corporation Law (Rev. Code 1915, § 1943), and is as follows:
"After the first election of directors no stock shall be voted on at any election which shall have been transferred on the books of the *Page 77 
company within twenty days next preceding such election."
Williamson's shares were transferred to him on February 15, 1927. The meeting for the election of directors was called for and held on March 7, 1927. The defendants argue that the twenty-day period ends on the day before the meeting and commences on the twentieth day prior to, the day before the meeting. If this be so, illiamson's stock was transferred within the twenty-day period. The method however by which the defendants calculate the twenty-day period is not the proper one. Where a thing is to be done "within" a certain period of time, in computing the time "either under a rule of court or a statute, in the absence of anything showing a contrary intent, the first day should ordinarily be excluded, but the day on which the act is to be done should be included." The quoted language is that of Judge Harrington in the case of Simkin v. Cole, 2 W. W. Harr. 271, 122 A. 191. There is nothing showing a contrary intent against the rule of computation in this case. It follows therefore that the Williamson stock was not transferred on the books within the twenty-day period mentioned by the statute.
The right of the Williamson stock to vote is assailed upon another ground, one which challenges his right to be regarded as a stockholder at all, notwithstanding he paid for his stock, has a certificate evidencing his status as stockholder and appears as a stockholder on the corporation's books. The complainants make the point that Williamson is not a party to these proceedings and that it would not be proper for this court in his absence to pass upon his right to be regarded as a stockholder. The right to vote stock is certainly an important and at times a highly valuable incident to the stockholder's shares. When it is proposed that a stockholder's right to vote shall be denied him, he is an indispensable party to the proceeding. It was so held in the following cases where an injunction against the voting of shares was held to be properly denied when the owner of the shares was neither in court nor could be brought in. Talbot J. Taylor Co. v. Southern Pacific Co. (C. C.) 122 F. 147; General Investment Co. v. Lake Shore, etc., Ry. Co. (C.C.A.) 250 F. 160. If an injunction should not issue in such cases, it is equally true that the vote having been received it should not be rejected in a review proceeding when the stockholder casting the vote is not a party. The complainants of course who champion Williamson's right did not make him a party. That he could have been made a party by the defendants and brought into court by effective process would appear beyond doubt in view of the recent amendment to the General Corporation Law (33 Del. Laws, c. 104) authorizing the Chancellor in proceedings for review of corporate elections to pass upon the question of the right of a person claiming to own stock to vote at such election. The complainants had no reason to make Williamson a party because while some questions were asked at the meeting concerning his stock, no protest was made against the legality of his status as a stockholder, and the vote on his stock was rejected solely because of the manner in which it was attempted to be voted, a question with which I have hereinbefore dealt. Not only could Williamson have been made a party by the defendants; he could also have been brought into court by effective process. Bouree et al. v. Trust Francais, etc., 14 Del. Ch. 332, 127 A. 56. The sending to him of a registered letter by the defendants notifying him of the pending proceedings cannot of course make of him a party or, if he had been named as such, constitute effective process upon him.
In the absence of Williamson as a party to these proceedings, I therefore decline to reject the ballot which was cast representing the stock held by him of record. It should be counted as cast for its full legal effect.
Having determined that the so-called cumulative ballots should be counted in the only way that the law would allow, and that the ballot on the Williamson stock should be counted in that group of ballots, the result follows that the complainants received the following votes: Chappel 682, Daly 671 and Gammell 671. This result, whatever is done with respect to the Snodgrass stock, gives them a majority of votes and entitles them to a decree that they were elected as directors and are entitled to hold office as such.
In view of the conclusion reached, it is unnecessary to proceed to a consideration of the questions presented by the Snodgrass shares.
 Decree accordingly. *Page 352