EMMA R. PAULEY, Respondent, v. BUSINESS MEN'S ASSURANCE COMPANY OF AMERICA, Appellant.

In the Kansas City Court of Appeals, May 5, 1924.

1. **INSURANCE: Under Terms of Application and Policy of Accident Insurance Mere Delivery Without Acceptance by Insured Held Insufficient.** Where application and policy of accident insurance provided that it was to take effect when it was received and accepted by insured, and that it did not "cover any injury, fatal or otherwise, sustained by the insured prior to his actual receipt and acceptance of policy, the delivery of policy to insured in his lifetime by depositing it in mail, *held* insufficient in absence of evidence that insured accepted policy.

2. ———: **Under Terms of Policy Insured not Required to Show Acceptance Thereof, but Merely to Signify His Non-acceptance.** Where under terms of accident policy and application therefor it was provided that insured upon receipt of policy could examine it and if satisfactory he could return it within three days, *held* insured was not required to show his acceptance upon which policy was to become effective, but same could have been made merely by a mental act.

3. ———: **Plaintiff's Evidence Held not to Show That Accident Policy was not Received by Insured During His Lifetime.** Where accident policy provided that it should not become effective until insured received and accepted it, plaintiff's evidence *held* not to show that the policy was not in the hands of insured during his lifetime.

4. **DEMURRER: Trial Practice: Upon Demurrer to Evidence any Inferences Drawn from the Testimony Must be in Plaintiff's Favor.** Upon demurrer to the evidence, any inferences that may be drawn from the testimony must be in plaintiff's favor.

5. ———: **Tender: Tender of Premium Must be Made to Administrator of Insured and not to Beneficiary.** Premium paid on policy, which insurer contended was not in effect because not accepted by insured, must be tendered after death of insured, to his administrator and not to beneficiary.

6. ————: **Burden of Showing Tender of Premium or reason for Retention Thereof Held to be upon Insurer.** In an action upon an accident policy where it was claimed that non-delivery and acceptance thereof by insured during his lifetime was waived by retention of the premium by insurer, *held* that burden of proving tender of premium was upon insurer or why it retained the same, in view of the fact that the evidence to prove the fact excusing such retention was entirely within its knowledge.

7. **EVIDENCE: Burden of Proof: Where Proof of Fact is Chiefly within Control of Adverse Party, the Burden is upon Him to Produce Evidence Thereof.** Where proof of a fact is chiefly, if not entirely, within the control of the adverse party, or where he knows or has special opportunity of knowing the fact, the burden upon him is to produce evidence thereof, even though ordinarily where the existence of such a fact is essential to the affirmative relief sought, the burden of proof is on the party who makes the affirmative plea.

8. **INSURANCE: Estoppel: Where Insured Failed to Show Tender of Premium, it was Estopped from Claiming That Policy Never Had Existence.** Where the burden was upon insurer to prove tender of premium to the administrator of the estate of insured, and the evidence wholly failed to show such a tender, the insurer was estopped from claiming that the policy never had existence.

9. ————: **Insurer Retaining Premium under Policy Which it Claimed was not in Force, Held Guilty of Lack of Good·Faith in Contesting Suit and Jury was Justified in.Awarding Statutory Penalties for Vexatious Refusal to Pay.** Where insurer retained premium and at the same time claimed policy never was in force, it was guilty of lack of good faith on its part in contesting suit, and under the circumstances the jury was justified in awarding statutory penalties and attorneys' fees for vexatious refusal to pay.

Appeal from Circuit Court of Mercer County.—*Hon. L. B. Woods*, Judge.

AFFIRMED.

*Hyde & Hyde* and *Solon T. Gilmore* for appellant.

*John E. Powell* and *Mossman, Rogers & Buzzard* for respondent.

BLAND, J.—This is a suit upon a policy of accident insurance in the sum of $5000 issued by the defendant on April 6, 1922, to one Elmer F. Pauley, of Princeton, Missouri, in favor of his wife, the plaintiff, as beneficiary in case of his death. There was a verdict and judgment in favor of plaintiff in the sum of $5250 on the policy, $500 as a penalty and $1000 as attorneys' fees. Defendant has appealed.

In his application for the insurance Pauley, the insured, stipulated that the policy was to take effect when it was received and accepted by him and that he agreed that upon receipt of the policy he would examine it and if satisfactory he would accept it, but if it was not satisfactory he would return it within three days in order that the amount that he paid at the time of his application to carry the insurance to the next premium payment date might be returned to him. In the application insured directed that the policy be mailed to him. The policy provided "the accident insurance under this policy does not cover any injury, fatal or otherwise, sustained by the insured prior to his actual receipt and acceptance of this policy."

Defendant's contention is that the policy never was in force and effect for the reason that the insured was killed before the policy was received and accepted by him. Plaintiff introduced testimony tending to show that her husband came to his death by external, violent and accidental means; she then introduced the policy and proved the amount of the attorneys' fees, and rested. Thereupon defendant put upon the stand the postmaster at Princeton, Missouri, who was asked if he received on or about April 8, 1922, at the post office there, an envelope containing mail matter bearing defendant's name addressed to E. F. Pauley, Princeton, Mo. He answered that he did not know the exact date but that Pauley died

the night of April 8th and that he saw the letter in the post office the following morning; he stated that "it occurs to me there was a letter—something of the description that you made—in the office that morning;" that he delivered the letter personally on the morning of the 9th at Pauley's house to some other woman than Mrs. Pauley who did not come to the door; that he delivered to Pauley's house more than one piece of mail that morning and to the best of his recollection he delivered a letter bearing the return mark of the Business Men's Assurance Company of America. On cross-examination he testified that it was 120 miles from Princeton to Kansas City (the home office of the company was located in the latter place and the policy was mailed from there); that there were several mail trains from Kansas City to Princeton and that the distance was covered by train in four and a-half or five hours. He further testified that he had assistants in the post office; that his hours were from six to six during the week and from six until the time the mail was distributed on Sunday morning and from 12:30 to 2:30 in the afternoon of that day; that the letter was delivered on Sunday morning; that he had no positive knowledge or recollection as to when defendant's letter came into the post office; that it was unopened at the time he delivered it; that it never left the post office prior to Pauley's death. "You don't know if he ever had it in his hands before that (his death), do you? A. No, I think not."

Defendant then called plaintiff who testified that she first saw the policy just after the mail carrier brought it; that he brought it Sunday morning after her husband's death; that some woman handed it to her; that she did not see who delivered it at the house. "Your husband never saw the policy so far as you know? A. So far as I know—I don't know." On cross-examination she testified that she did not know who brought the policy to her house. She did not know where it came from, that some lady handed it to her; she did not know whether

217 Mo. App.—20.

Pauley had it in his possession or in his hands before his death. On re-direct examination she testified that the policy was not in an envelope when it was handed to her but that one Dr. Perry opened the envelope in her presence shortly after she received it. On behalf of defendant Dr. Perry testified that a large sealed envelope addressed to Pauley came to plaintiff's house on the Sunday morning in question; that "I think probably it was handed to Mrs. Pauley and she handed it over to me." He did not say definitely who handed the envelope to him; that "someone handed it to me;" that he did not know who brought the letter to the house; that it was sealed when it reached his hands and had canceled postage stamps upon it but that he did not know the date of the cancellation of the stamps; that he opened the letter and found therein the policy of insurance sued on.

It is insisted by the defendant that the court erred in failing to give defendant's instruction in the nature of a demurrer to the evidence for the reason that the evidence shows the policy was not in effect at the time of the death of the insured. Plaintiff insists that she made out a prima-facie case when she introduced the policy and proved the death of the insured. In support of this contention she cites cases so holding in circumstances where there was nothing in the policy to prevent it being effective upon delivery. In such cases plaintiff makes out a prima-facie case because of the presumption that the policy being in his possession is presumed to be there lawfully. It is held in these cases that while this presumption is rebuttable, and there is testimony on the part of the defendant tending to show nondelivery and acceptance of the policy on the part of deceased, the credibility of the witnesses is for the jury, and however strong and convincing the testimony of the defendant may be, the court cannot direct a verdict for it. [Lafferty v. Casualty Co., 287 Mo. App. 555; Gannon v. Gas Company, 145 Mo. 502.] But these cases are unlike the instant one. Here there is no question but that the policy

was delivered during the lifetime of the insured for the delivery took place when the policy was deposited in the mail, but the application and policy provide that the latter should not become effective until the insured received and accepted it. The insured had the right to reject the policy after he received it and until insured was bound of course the company was not bound either.

In addition to this it is insisted by defendant that the testimony of plaintiff herself shows that the policy was never received and accepted by the insured during his lifetime and although she was put upon the stand by the defendant she is bound by her own testimony. Great stress is laid by defendant upon the terms of the application and the policy that the latter should not be in force until insured not only received the policy but accepted it. It will be noted that it is not provided in the policy that the insured should do anything to show his acceptance of the policy but merely to signify his non-acceptance. The acceptance of the policy on the insured's part could have been made merely by a mental act. Plaintiff insists that the insured could have accepted the policy without even opening the envelope and reading it and states that many persons applying for insurance do not read their policies when they are sent to them, and if insured actually received the policy and determined to accept it without reading it and put it aside without opening the letter, the acceptance of the policy by the insured was complete.

The testimony of plaintiff does not show that the policy was not in the hands of the insured during his lifetime. She first testified that the mail carrier brought the envelope containing the policy but afterwards testified that she did not know who brought it to the house or where it came from, merely that some woman handed it to her; she did not know whether Pauley had it in his possession before his death or not. Under such circumstances the jury was not required to believe her testimony that the mail carrier brought the envelope but they were

at perfect liberty to believe her testimony on cross-examination that she did not know who brought the letter nor where it came from. [Guthrel v. Guthrel, 153 Mo. App. 214; Bond v. Railroad, 110 Mo. App. 131; Bobbitt v. United Rys. Co., 169 Mo. App. 424; Cravens v. Hunter, 87 Mo. App. 456.] Nor is defendant entitled to draw inferences from this testimony in its favor; any inferences that may be drawn from the testimony must be in favor of plaintiff. [Dye v. Ins. Co., 207 Mo. App. 540; Murrell v. Railroad, 279 Mo. 92.] From all that the testimony of plaintiff shows, the policy in the unopened envelope may have been in the possession of the deceased prior to his death. The policy is dated the sixth and deceased died on the night of the 8th. The jury were not required to believe the other witnesses, or if they did believe them, only in so far as their testimony tends to help out plaintiff's case. The evidence shows that the policy was dated the 6th, deceased was not killed until the night of the 8th and it required only four and a half or five hours for mail trains to make the trip from Kansas City to Princeton where deceased lived.

But is plaintiff entitled to the presumption that the insured *accepted* the policy during his lifetime merely because she introduced the policy in evidence in view of the fact that the mere delivery of the policy, reading as the contract does, did not put the policy in force? She introduced no evidence tending to show that deceased accepted the policy but relies merely on presumptions. This is a very vital point in this case, but from what we are about to say concerning another matter the necessity of our deciding this point is obviated.

The verdict is undoubtedly for the right party. In defendant's answer it pleaded that defendant had tendered the sum of money it had collected as a premium upon the policy to plaintiff and the administratrix of the estate of the insured; that plaintiff and the said administratrix both refused to accept the same and "that said tender has been kept open and defendant does hereby re-

new said tender and offers to pay plaintiff said sum above stated.'' It is admitted that if tender of the premium was required at all, that it should have been tendered to the administrator and not to plaintiff, and this is the law. [State ex rel. v. Trimble, 239 S. W. 467] There is no evidence in the record that defendant tendered to any one the premium collected at the time the application was signed. Under this condition of the record it is insisted by plaintiff that defendant has waived its defense of non-delivery of the policy for the reason that it is assuming an inconsistent position by the retention of the premium while claiming that the policy never took effect. In answer to this defendant says—

''. . . It may be that where the defendant is relying upon a forfeiture, in other words, is seeking affirmative relief to be released from the obligation created by the contract, that it is incumbent upon it to show, as a condition precedent to its right to forfeit the contract, that it offered to return the premiums paid. In such cases the offer to return the premium is a part of defendant's own case. It is a condition, precedent, as it were, to its right to stand upon the forfeiture. Authorities that hold, therefore, that the defendant company cannot insist upon a forfeiture in the absence of an allegation and evidence of an offer to return the premium, are not in point. They are dealing with cases where that offer is essential to the affirmative relief sought by the defendant. In the case at bar the affirmative relief is sought by the plaintiff.''

''. . . Plaintiff asks affirmative relief and a part of her cause of action, according to her counsel, would be the waiver by the defendant of its right to insist that the policy had never been effective and yet the plaintiff with this affirmative burden upon her has offered no evidence whatever to substantiate such a waiver.''

But this would be placing a burden upon plaintiff to prove a negative, that is, that defendant had not tendered

the premium to the administrator of the estate of the insured.

Conceding, but not deciding, that plaintiff was asking affirmative relief and that a part of her cause of action would be to show that defendant by the retention of the premium has waived the right to insist that the policy had never been effective, we think under the circumstances that the burden of proving the matter was upon the defendant. Defendant admits in its brief "all that the record discloses is that the admission by it that it has this money in its keeping and that it is not entitled to it." This refers to the allegation of defendant's answer. If defendant has money in its possession that it is not entitled to keep, is not the burden upon it to show why it retains possession of it, in view of the fact that the evidence to prove the fact that would excuse such retention is chiefly if not entirely within its knowledge; that is, whether or not it had made tender of the money to the person entitled to receive it and that person had refused to accept it? It is well established in this State that where the proof of a fact is chiefly if not entirely within the control of the adverse party, or where he knows or has special opportunity of knowing the fact, the burden upon him is to produce evidence of such a fact even though ordinarily where the existence of such a fact is essential to the affirmative relief sought, the burden of proof is on the party who makes the affirmative plea. [Schneider v. Maney, 242 Mo. 36, 43; Swinhart v. Railway, 207 Mo. 423; Fulwider v. Gas Light and Power Co., 216 Mo. 582; State v. Miller, 182 Mo. 370; 22 C. J. 81; 10 R. C. L., 902.]

". . . Where a negative is essential to the existence of a right, the party claiming the right has the burden of proving such negative—at least when the means of proving the fact are equally within the control of each party; but when the opposite party must, from the nature of the case, be in possession of full and plenary proof to disprove the negative averment, then he must adduce

it, or it will be presumed that the fact does not exist." [10 R. C. L. p. 899.]

The burden being upon the defendant to prove the tender of the premium to the administrator of the estate of the insured and the evidence wholly failing to show such a tender, it is estopped from claiming that the policy never had existence. [Harland v. Ins. Co., 192 Mo. App. 198; Caldwell v. Ins. Co., 245 S. W. 602; Davis v. K. & L. of Security, 196 Mo. App. 485; Mining & Milling Co. v. Fire Ins. Co., 267 Mo. 524; Jegglin v. W. O. W. 202 Mo. App. 367; Dyer v. Ins. Co., 244 S. W. 964.] While it is probably not material the fact is that there is no admission in the brief that plaintiff was the administratrix of the estate of the insured; on the other hand, plaintiff states that another person is administrator.

Complaint is made of the allowance of the statutory penalties for vexatious refusal to pay the insurance. Defendant by holding on to the premium and at the same time claiming that the policy never was in force, was guilty of a lack of good faith on its part in contesting this law suit. Under the circumstances the jury was justified in awarding the penalty and attorney's fees. [Jaggi v. Ins. Co., 191 Mo. App. 384; Brown v. Ry. Passenger Assurance Co., 45 Mo. 221.]

The judgment is affirmed. All concur.