LEMAY FERRY BANK, a Corporation, Respondent, v. NEW AMSTERDAM CASUALTY COMPANY, a Corporation, ET AL., Defendants, NEW AMSTERDAM CASUALTY COMPANY, a Corporation, Appellant. —149 S. W. (2d) 328.

Division Two, April 3, 1941.

794

*Wayne Ely* and *Harold R. Small* for New Amsterdam Casualty Company.

796

*Fred J. Hoffmeister* and *Hay & Flanagan* for respondent.

WESTHUES, C.—Respondent, Lemay Ferry Bank, obtained a judgment in the sum of $12,482.27, in the Circuit Court of St. Louis County, against appellant, New Amsterdam Casualty Company, as

surety, and Herman C. Becker, principal for an alleged breach of an indemnity bond. From the judgment the casualty company appealed.

Plaintiff, Lemay Ferry Bank, had in its employ as assistant cashier, the defendant Herman C. Becker. The bond sued on covered a period from March 22, 1930, to March 9, 1931. On the latter date a blanket bond covering all employees of the bank was issued by the Indemnity Company of North America. Mr. Becker, as assistant cashier, had charge of the ledger accounts from the letter "L" to the letter "Z." On July 14, 1934, an employee of the bank informed the president thereof that she saw the defendant Becker hide some papers under his desk. It was then after banking hours. The president made a search and found a number of ledger sheets which should have been in the ledger. An examination disclosed that without these sheets no shortage appeared, but with them added to the ledger there was a shortage of over $20,000. From the evidence it appears that the amount of the shortage was concealed by Becker withdrawing from the ledger of the demand deposits a sufficient number of sheets showing deposits which equaled the amount of the shortage. The peculations extended over the period from 1929 to 1934, during which time the bank was regularly examined by bank examiners and no shortage discovered. Immediately upon the discovery the indemnity company was notified of the shortage. This company was also given the names of the customers whose ledger sheets were found missing from the ledger on July 14, 1934, and the amount of the deposits these customers had on deposit. Appellant was also notified that irregularities had been discovered in the records of Mr. Becker and that the indemnity company had been notified. In response to that notice two representatives of the appellant company appeared at the bank. In our original opinion we briefly related what took place when the representatives were at the bank. Appellant found fault with our statement so we have decided to quote from the record. Mr. Boenecke, president of the bank, testified as follows:

"I told one of the representatives just what happened and what transpired, the discovery that the sheets had been held out from the general ledger and the manner in which they were taken out. I called attention to savings passbooks in which the shortage went back to 1929, and I told them then, at that time, that was all we were able to uncover; however, they were free to examine our records and were free to go into our records. After making a casual examination one of the gentlemen said he was familiar with this method of embezzlement. They said they were not concerned and left.

"I showed them the original ledger that was withheld. They remained at the bank probably a half an hour. The only evidence I

had at that time were the original sheets of 1934, and one savings passbook, in which there was a discrepancy in 1929. They said they were not concerned and left. I invited them to check our records, that they were free to go into our records."

Negotiations with the indemnity company continued and further examination of the bank records disclosed additional shortages. By February, 1936, a total shortage of over $28,000 had been uncovered. The indemnity company denied liability for the total loss. Plaintiff's witnesses testified that it was a very difficult and tedious task to determine the dates on which the embezzlements had occurred. The president of the bank testified that about February, 1936, they ascertained definitely that the total shortage which occurred after March 9, 1931, was $20,313.24, and the shortage between March 22, 1930, and March 9, 1931, was $8009.54. A settlement was consummated with the indemnity company and that company was given a full release upon the payment of, $21,500, which included principal, interest and attorneys' fees. On February 7, 1936, the appellant company was notified that the shortage during the period covered by its bond was $8009.54, and a demand for payment was made. This letter of notification and demand contained the following: "If you want us to furnish you with any additional information will you kindly let us know?" Thereafter, on February 29, the defendant company prepared a contract which the company and the bank signed. This contract contained the following:

"Whereas, the said Lemay Ferry Bank of Luxemburg, Missouri, and the said New Amsterdam Casualty Company are both desirous that the said New Amsterdam Casualty Company make a full and complete investigation of the aforesaid claim asserted against the said Herman C. Becker and the said New Amsterdam Casualty Company, and that the said investigation be made without prejudice to the rights of either of the parties.

"Now, Therefore, in consideration of the mutual covenants and promises herein stipulated, it is agreed by and between the parties hereto that the said New Amsterdam Casualty Company may conduct a full and complete investigation of the aforesaid claim . . ."

The appellant company, however, never made any investigation. On April 1, 1936, plaintiff wrote the defendant a letter addressed to its St. Louis offices. In this letter plaintiff referred to a number of previous letters to which there had been no reply. Plaintiff also stated in this letter that if settlement were not made, suit would be filed. The St. Louis office merely responded, that since previous communications had been addressed to the home office, plaintiff's letter had been referred to that office for reply. No reply was received and this suit followed. Prior to February 7, 1936, plaintiff asked appellant to furnish a copy of the bond, because the copy held by the bank had been lost. In response appellant furnished a blank

form of bond. This bond was wanted to ascertain the provisions thereof and the liability of appellant company as well as the liability of the indemnity company. A rider on the indemnity company bond provided that this blanket bond would cover losses under the former bond if discovered after expiration of time which might have been provided therein for discovery or for filing claim. The indemnity company contended that it was not liable for the loss which had occurred during the period covered by appellant's bond.

Appellant introduced no evidence to contradict that of respondent as to the amount of loss, or that such loss occurred during the period covered by its bond. Respondent introduced evidence that the settlement with the indemnity company did not cover the amount claimed from appellant. Appellant relied on the theory that respondent failed to comply with the provision of the bond pertaining to notice and claim of loss. The proviso reads as follows:

" '1. That claim, if any, be submitted by the employer in writing, showing the items and the dates of the losses, and be delivered to the surety at its home office within three months after such discovery, and that the surety shall have two months after claim has been presented in which to verify and to make payment.' "

Appellant's contention is, that the bank failed to comply with the above provision of the bond and therefore cannot recover under the bond because compliance with the above provision was a condition precedent to any liability. The court instructed the jury in substance that it was not authorized to find for the defendant because of the failure to furnish a claim showing the items and dates of losses, unless the jury found it was possible to do so and that the defendant was prejudiced by such failure. Appellant insists that it should have been furnished with the exact dates of the losses.

██ The purpose of the provision in the bond is evident. By it the bank was required to furnish the company definite information so that the losses claimed might be investigated. While the bank did not furnish the defendant company with the date on which any particular loss occurred, it did give information that during the year covered by the bond a loss of $8009.54 was sustained by the bank through the misfeasance of Becker. The company, however, received more information than that, because in response to the notice of July, 1934, two of the company's representatives were sent to the bank. From the testimony of the president of the bank these representatives were informed of the method used by Becker in concealing the losses. They were shown the original ledger and also the sheets withheld by Becker, which were found up to that time and covered a loss of more than $20,000. These representatives made only a casual examination, and one of them stated that they were familiar with that method of embezzlement. Of course it was impossible for the bank to ascertain what sheets had been withheld

by Becker from time to time and replaced. It could only ascertain the sheets which were out on the date the loss was discovered, namely July 14, 1934. When the company was given the definite information that the loss during the period covered by its bond was $8009.54 the bank inquired if the company desired any further information. The company did not reply to this letter. A few days later the company prepared a contract, which was referred to above, wherein the company stated it desired to make a full and complete investigation. Nothing was ever said about the bank giving further information. No investigation was made at any time by the defendant company. It is evident from the evidence that the plaintiff bank was ready and willing at all times to aid the company in making an investigation of the loss, or to furnish any information it desired. In face of that the appellant now insists that the bank could have furnished the dates on which the shortages occurred and since it failed to do so defendant company is not liable. We cannot see how the defendant company was prejudiced by failure of the bank to furnish it the particular dates on which the losses occurred. Evidently the appellant company did not consider such detailed information important. The failure of the bank to furnish such information was not mentioned until after suit was filed. We said in our original opinion that the evidence showed the bank had complied with the provision of the bond above noted. Appellant found fault with that conclusion. We now say that if it was not a strict compliance it was a substantial compliance. Appellant has failed to point out how it was prejudiced by a failure to have the detailed information. We cannot see how it was prejudiced, especially in view of the fact that the bank stood ready and willing to furnish any information appellant might have wanted. A jury found that the company was not prejudiced. The instruction of the trial court followed the law. [See Walker v. American Auto Ins. Co., 229 Mo. App. 1202, 70 S. W. (2d) 82, l. c. 85; Dezell v. Fidelity & Casualty Co., 176 Mo. 253, 75 S. W. 1102, l. c. 1112.] In the Walker case the court quoted with approval the following:

" 'The refusal of the trial court to peremptorily direct a verdict for defendant is assigned as error. It is said that plaintiff made no case, since the evidence showed that he failed to comply with the condition of the policy requiring notice to the defendant within 20 days after the accident. It may be noted that the policy does not expressly provide for a forfeiture in case of failure to give such notice, nor make the giving thereof a condition precedent to recovery. Forfeitures are not favored; and we do not think that we would be authorized to supply one by implication from the language employed in the policy. [See Dezell v. Fidelity & Casualty Co., 176 Mo. 253, l. c. 281, 75 S. W. 1102; Zackwik v. Fire Ins. Co. (Mo. App.), 225 S. W. 135.]' "

Appellant has briefed the case, citing numerous cases, as though no notice had been given. It must be remembered that in this case a notice was given, but detailed information as called for was not given. Certainly there is a vast distinction in a case where there was failure to give any notice and a case where notice was given which failed to give certain detailed information, but where the company's representatives were personally shown much of such detailed information. Appellant cited such cases as State ex rel. Order of United Commercial Travelers of America v. Shain, 339 Mo. 903, 98 S. W. (2d) 597; Soukup v. Employers' Liability Assur. Corp., Limited, of London, England, 341 Mo. 614, 108 S. W. (2d) 86. A reading of those cases will disclose that they are not in point. We rule, therefore, that the evidence was sufficient to sustain the verdict, and also that the instruction given at plaintiff's request, authorizing the verdict, was proper.

■ Appellant also urges that the trial court erred in permitting recovery for vexatious delay. The evidence fully justified a submission of that question to the jury. The course of action taken by the company in this case was one of totally ignoring the bank's claim. It did not answer the letters notifying it of the amount of loss and demanding payment. When suit was threatened in a letter sent to the St. Louis office that office made the following reply:

"Inasmuch as your previous communication was addressed to the Home Office, we have forwarded your letter to them for reply."

The home office did not reply. At the trial the company did not question that a loss as claimed had occurred, or that the loss was covered by the bond. It must also be noted that the bank records were available during the entire period from the first time the company was notified until the case was tried. The company did not avail itself of the right under the bond to verify the truth of the claim. It failed to reply to the bank's letter asking if any further information was desired. The only evidence offered by the company was in support of its position that no notice or itemized statement, as required by the bond, had been filed by the bank. In such circumstances the question of vexatious delay was properly submitted to the jury. [Bank of Oak Ridge v. Duncan, 328 Mo. 182, 40 S. W. (2d) 656, l. c. 659 (6, 7); Exchange Bank v. Turner, 321 Mo. 1104, 14 S. W. (2d) 425, l. c. 433 (14) (15).] In the latter case this court said:

"Complaint is made also on the ground that the facts did not warrant the assessment for vexatious delay under Section 6337, R. S. Mo. 1919. It is true, as appellants say, that insurance companies, acting in good faith, may contest either issues of fact or law without subjecting themselves to the penalties of the statute; and there are some issues of law in this case about which lawyers reasonably might differ. [Aufrichtig v. Columbia Nat. Life Ins. Co., 298 Mo. 1, 15, 249

S. W. 912; State ex rel. Gott v. Fid. & Dep. Co., 317 Mo. 1078, 1095, 298 S. W. 83, 91.] But the mere presence of a real law question in the record will not of itself exculpate the defendant from a charge of willful obstruction if there is evidence that its attitude was vexatious and recalcitrant. [Non-Royalty Shoe Co. v. Phoenix Assurance Co., 277 Mo. 399, 423, 210 S. W. 37, 43; Fay v. Aetna Life Ins. Co., 268 Mo. 373, 388, 187 S. W. 861, 865; Young v. Penn. Fire Ins. Co., 269 Mo. 1, 21, 187 S. W. 856, 861.]''

The judgment in the case was for $8009.54 for the loss; interest from July 27, 1934, at 6 per cent, $2122.53; $500 for vexatious delay and $1850 for attorneys' fees. Appellant also complained of the amount of interest. It is urged that interest should not have been calculated from July 27, 1934. In this appellant is correct. Respondent notified appellant on February 7, 1936, of the amount claimed to be due. Appellant, under the terms of the bond, had two months in which to verify the loss sustained and pay the claim. Interest should therefore be allowed from April 6, 1936, to the date of judgment. If respondent therefore will within ten days enter a *remittitur* of $786.30 the judgment of the trial court will be affirmed for $11,695.97, with interest from the date the judgment was entered in the circuit court, that is, January 18, 1939, otherwise the judgment to be reversed and remanded. It is so ordered. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.