Bud STILL, Quentin Still and Paul Still, Plaintiffs-Respondents,

v.

The TRAVELERS INDEMNITY COMPANY, a Corporation, the Maryland Casualty Company, a Corporation, the Safeguard Insurance Company, a Corporation, and the Continental Insurance Company, a Corporation, Defendants-Appellants.

No. 49837.

Supreme Court of Missouri,

Division No. 1.

Dec. 9, 1963.

Motion for Rehearing or to Transfer to Court En Banc Denied Jan. 13, 1964.

James E. Reeves, Ward & Reeves, Caruthersville, for plaintiffs-respondents.

Riddle, O'Herin & Newberry, Malden, for defendants-appellants.

WELBORN, Commissioner.

This is an action to recover on four fire insurance policies issued by the appellants, The Travelers Indemnity Company, Maryland Casualty Company, Safeguard Insurance Company and The Continental Insurance Company. Respondents claimed as assignee of the insured named as the owner of the insured property, and also as named security holders in standard union mortgage clause endorsements on each of the policies. Appellants denied liability on the grounds that the named insured was not the owner of the property insured and that respondents were not mortgagees of such property. On a trial to the court without a jury, a general judgment, without express findings of fact and conclusions of law, was entered in favor of respondents for the principal amount of the policies, $3,360 each in the case of Travelers, Maryland and Safeguard and $1,920 against Continental, interest of $258.72, penalty for vexatious delay of $361.87, and attorney's fee of $420 against each of the first three named appellants, and $147.84, $206.78, and $240 for each of these three items, respectively, against Continental. The four defendants have joined in the appeal, and, the aggregate of the judgment appealed from exceeding $15,000, we have jurisdiction.

Steele Supply Co. was incorporated under the Missouri General and Business Corporation Law on June 12, 1959. The incorporators were Paul G. Still and Quentin Still, two of the respondents here, and Howard Watkins. Of the $50,000 authorized capital, the corporation began business with 271 shares of $100 par value issued, 135 to each of the Stills and 1 to Watkins. The beginning capital was paid up by transfer of the assets of a partnership of the Stills which had previously operated under the name adopted by the corporation. The business of the corporation was operation of a lumber yard at which lumber, building supplies and hardware were sold. Paul G. Still was elected president of the corporation, Quentin Still, secretary-treasurer, and Watkins, vice-president. Watkins was also the manager of the lumber yard.

On December 12, 1959, an instrument captioned "Bill of Sale" was executed by the Stills and Watkins. By the bill of sale, the Stills sold Watkins their 270 shares of the capital stock of the Steele Supply Co. The instrument recited: "This stock includes all of the assets listed below." Then followed an enumeration of two trucks, items of office furniture and equipment. "All merchandise now in stock including building materials of every nature." The instrument recited that the buyer assumed liability for the accounts payable at the time of the transaction and that the Stills were to retain the accounts receivable at that date. (On trial, evidence was that these items were approximately $15,000 and $20,000, respectively.) The consideration recited was $20,000, of which $4,000 was to be paid down and the remainder at the rate of $1,000 per month, with interest at 6% until fully paid. The "sellers" agreed to rent to the "buyer" the buildings occupied by Steele Supply Co. at a rental of $100 per month. The instrument bore the signatures of the three named parties. The name of each of the Stills was typewritten below his signature, followed by "Pres" after Paul's name and "Secy" after Quentin's.

The $4,000 down payment was paid to the Stills by M. T. Utley. To evidence the indebtedness for the balance due on the purchase price, Watkins executed two promissory notes, dated December 12, 1959. One, in the amount of $12,500, was payable to both Stills. The other, for $3,500, was payable to Quentin. The second note was secured by a chattel mortgage, covering two trucks and office equipment. According to Quentin, who prepared the bill of sale, the parties considered a chattel mortgage on the stock of merchandise not feasible. He also said that the understanding was that the capital stock would not be assigned to Watkins until the purchase price was paid in full. No attempt was made to make such transfer. No action was taken by the corporation as such on the sale to Watkins.

On January 20, 1960, four policies of insurance covering the merchandise in stock and office furnishings and equipment were issued, each for a one-year term. The Travelers, Maryland and Safeguard policies were for $7,000 insurance and the Continental for $4,000. The policies described the property covered as the contents of three buildings, one of which was described as a lumber shed "located 2nd Rear of 307½ N. Walnut Street * * * Steele, Missouri." The insurance on the contents of this shed was $12,000, with each of the policies covering pro rata.

The named insured in each policy was: "Howard Watkins, Jimmy J. Watkins & Sue Watkins (as their interest may appear) D/B/A Steele Supply Company, Steele, Missouri." (At the trial it was stipulated that Jimmy and Sue Watkins had no interest in the property.) Attached to each policy was a standard union mortgage clause, stating: "Loss or damage, if any, under this policy, shall be payable to Mr. Bud Still, Quentin Still and Paul Still as their interest may appear mortgagee [or trustee] * * *." (Bud Still was the father of the other two Stills and was described as their "financier.") Premiums of $228.75 were paid on March 4, 1960.

On August 9, 1960, fire destroyed the lumber shed described as second rear of 307½ North Walnut Street and its contents. On September 26, 1960, Watkins executed a sworn proof of loss, claiming $12,000 due under the policies for loss of the contents of the shed. The insurers had previously made an investigation of the loss. On December 2 1960, at the request of the insurers, the Stills and Watkins were interrogated under oath by an attorney for the insurers. According to answers to interrogatories, they learned then for the first time that Steele Supply Co. was a corporation.

By letter of January 5, 1961, an attorney for the insurers notified Watkins that his claim for loss had been denied. No reason for the denial was given. By letter of January 20, 1961, an attorney for the Stills was informed that the insurers had no obligation to the Stills for the following reasons:

"a). We have no contract with them.

"b). They do not hold a mortgage on any of the property destroyed and, therefore, under no circumstances could have an insurable interest therein."

The property covered by the chattel mortgage securing the $3,500 note was not among the property for which claim of loss was made.

On February 10, 1961, Watkins assigned to Quentin Still his claim under the insurance policies. $300 was paid Watkins for the assignment. At the time, there was a balance due on the notes of Watkins of around $14,000.

The three Stills brought this action on May 2, 1961. In their petition, they claimed as assignee of Watkins and also as insureds under the policy. The appellants denied that Watkins had an insurable interest in the property lost, except as the holder of 1 share of stock of the Steele Supply Co., which they claimed had no value. They alleged that the property lost was the property of Steele Supply Co., a corporation. They denied that the respondents owned any of the property lost or held a mortgage on it or other security interest therein from the corporation.

The respondents' evidence at the trial consisted of the testimony of Quentin Still and Watkins and documentary evidence of the transactions above described. The appellants' testimony was designed to show that the operation of Steele Supply Co. was unprofitable, and that, at the time of the loss, the one share of stock held by Watkins had no value.

The appellants here contend that the trial court's judgment is erroneous for the reason that Watkins had no insurable interest in the property destroyed by fire. They

contend that the bill of sale purporting to transfer the insured property to Watkins was void under Sections 351.400, 351.460, 351.465, 351.475, 351.480, 351.715, RSMo 1959, V.A.M.S. They also contend that the transaction is contrary to public policy. The statutes referred to by appellants are sections of the General and Business Corporation Law which provide procedure for the disposition of all or substantially all of the assets of a corporation (351.400) and the voluntary dissolution of a corporation (351.460—351.480). Section 351.715 reads: "For violation of any provisions of this chapter for which no other penalty is provided, the person violating shall be deemed guilty of a misdemeanor and upon conviction punished as provided in section 351.-720."

Appellants' position is that the failure to observe the statutory procedures made the attempted transfer void; that, the attempted transfer being void, Watkins had no insurable interest in the property lost. In support of this position, appellants rely upon the decisions of the courts of this state under which a person who has attempted to procure insurance on a motor vehicle which has been transferred to him without compliance by the seller with the motor vehicle title law has been held to have no insurable interest in the automobile. The leading case in this regard is State ex rel. Connecticut Fire Ins. Co. of Hartford, Conn. v. Cox, 306 Mo. 537, 268 S.W. 87, 37 A.L.R. 1456, decided in 1924. In that case, the court stated:

"The above act of 1921, not only required Robertson to make an assignment on the back of his certificate of title as a condition precedent to making a valid sale of the machine, but the law, as above quoted, described an attempted sale without a compliance with the requirements aforesaid as fraudulent and void. In addition to foregoing, section 29 of said act makes the violation of the requirements aforesaid, a criminal offense. Following the construction placed by this court upon laws of a similar nature, as disclosed in the cases heretofore cited, we are driven to the inevitable conclusion that the provision of the above act requiring the assignment, in case of a sale, to be made on the back of the certificate of title and returned as a part of such certificate is mandatory in its terms, and that the execution and delivery of the bill of sale was not a substantial compliance with said law." 268 S.W. 90.

This case has been followed subsequently in Mathes v. Westchester Fire Insurance Co. of N. Y., Mo.App., 6 S.W.2d 66; Evens v. Home Insurance Co. of N. Y., 231 Mo. App. 932, 82 S.W.2d 111; Kelso v. Kelso, Mo.Sup., 306 S.W.2d 534, 71 A.L.R.2d 258; Bordman Investment Company v. Peoples Bank of Kansas City, Mo.App., 320 S.W.2d 72; Haynes v. Linder, Mo.App., 323 S.W. 2d 505; Mackie and Williams Food Stores, Inc. v. Anchor Casualty Company, 8 Cir., 216 F.2d 317. See Sections 301.210, 301.440, RSMo 1959, V.A.M.S.

There is, however, a decisive difference between the motor vehicle title law and the statutes here relied upon by appellants. The motor vehicle law makes the transfer without proper assignment of the title unlawful, thereby subjecting the violator to the criminal penalties in Section 301.440. Bordman Investment Company v. Peoples Bank of Kansas City, supra. In addition, the statute (Section 301.210) expressly makes a transfer not in compliance with the statute "fraudulent and void." No stronger language could have been used to evidence the legislative object that a transaction not in accord with the statute is a nullity and the courts have given effect to this legislative declaration of policy. No comparable provisions are to be found in statutes dealing with the sale of corporate assets or the dissolution of a corporation. The legislature has prescribed a procedure to be followed in such matters. However, it has not declared a transaction which does not follow the prescribed procedure "unlawful" or "fraudulent and void."

In reaching its conclusion in the Cox case, the court considered the regulation in question "essentially a police regulation of the highest type, in which the public welfare was primarily considered in its enactment." 268 S.W. 90. See Evens v. Home Insurance Co. of N. Y., 231, Mo.App. 932, 82 S.W.2d 111, 116.

■ Quite clearly, statutes dealing with the sale of substantially all of a corporation's assets and corporate dissolution are not based primarily upon consideration of the public welfare. The statute on the sale of corporate assets is designed primarily for the protection of stockholders of the corporation. The procedure fixed by Section 351.400 calls for the directors to pass a resolution authorizing the transaction. The resolution is then submitted to the stockholders at either a special or regular meeting. Authorization requires a favorable vote of the holders of ¾ of the shares entitled to vote. No notice of such action is required to be given the public generally, to any public official or even to the creditors of the corporation. The object of this provision is made clearer yet by Section 351.405 which establishes the procedure whereby the rights of a dissenting shareholder are protected in a transaction of this type.

Similar statutes in other states have been held to be solely for the protection of stockholders. "Under the great weight of authority, statutes requiring numerical stockholder approval of a mortgage or transfer of substantially all of the corporate assets are 'for the protection of the stockholders * * *.'" United States v. Jones, 10 Cir., 229 F.2d 84, 58 A.L.R.2d 778. See 6–A Fletcher on Corporations (Perm. ed.), Section 2949, page 706. Cases on this proposition are collected in an annotation at 58 A.L.R.2d 784. Cases are there cited which have also permitted failure to obtain the required statutory consent to be taken advantage of by the corporation's creditors or anyone having a claim on its title, by its trustee in bankruptcy or assignee for creditors, or by a receiver in insolvency. 58 A.L.R.2d 795–798. See 13 Am.Jur., Corporations, 1963 Cum.Supp., Section 801, page 98.

In the case of Shell v. Conrad, Mo.App., 153 S.W.2d 384 (not cited by appellants), the court stated that an attempted transfer of a note of a stockholder in a transaction involving sale of all of a corporation's assets was void where the statutory procedures for such transaction had not been followed. Although the court used the word "void" with regard to the attempted transfer, the case was reversed and remanded for trial on the issue of whether or not the maker of the note was estopped to object to the transfer because of his participation in the meeting at which it had been approved. We do not consider that case authority for permitting appellants here to attack the transaction in this case.

The purpose of the statutes on voluntary dissolution, relied upon by appellants, is similar to that of the statute on sale of all assets although the dissolution statutes are more clearly for the protection also of creditors of the corporation. However, nowhere in the provisions relied upon by appellants is to be found any language making non-compliance "unlawful" or a transaction not in accord with the statute "fraudulent and void." Insofar as here appears, this transaction was not considered by the parties as one effecting a dissolution of the corporation. Among the exhibits introduced into evidence are minutes of a special meeting of the stockholders of the Steele Supply Co., held in November, 1960, at which Bud Still was elected a director to replace Watkins, which would indicate that the stockholders did not consider the corporate existence terminated.

■ Appellants argue that "the importance of preserving the integrity of the corporate entity is so important to public policy, that the law must permit a corporation only to act in conformance with the law and that any one who attempts to deal with the corporation in any other manner

must bear the burdens and penalties of having such acts declared null and void as a matter of public policy." As the source of corporate authority, the state does have some concern that the procedures fixed by the legislature be observed by corporations in the conduct of their affairs. However, where, as here, the regulation is not one for the protection of, or benefit to, the public generally and is intended to control matters as between the corporation and its stockholders or creditors, compliance with the statutory procedure is not such a matter of concern to the state that noncompliance therewith will enable a stranger to the transaction to protest its validity. It has long been recognized, for example, that, although a statute may require a particular notice of a meeting of the shareholders of a corporation, the presence of all of the stockholders may dispense with the necessity of complying with the statutory requirements. In re P. B. Mathiason Manufacturing Co., 122 Mo.App. 437, 99 S.W. 502, 504. Likewise, only shareholders may object to the failure to give notice. Coerver v. Crescent Lead & Zinc Corporation, 315 Mo. 276, 286 S.W. 3, 12. See 19 C.J.S. Corporations § 968, page 423. Here the stockholders for whose protection the statute exists were parties to the transaction. There is no evidence that creditors have in any manner objected to it. Even if they might, such right would not benefit the appellants in their defense of this action. Loe v. Downing, Mo.Sup., 325 S.W.2d 479.

Appellants point to Section 351.715, the general penalty provision of the corporation law. However, the legislature did not make noncompliance with the provisions of the statutes in question illegal or unlawful. No prohibitory language is found in the statutes here invoked. The general penalty provision does not make actions not in compliance with the procedures set out in the corporation law void and against public policy.

Other than the automobile cases, the appellants have cited no cases in which the courts have considered the question of insurable interest in property on the basis of its acquisition in an allegedly void or voidable transaction. They cite cases in which the courts have refused to enforce, between the parties thereto, contracts expressly declared void by statute or which were contrary to substantive statutory provisions. Inasmuch as none of the cases cited involved the question of insurable interest, we do not consider them relevant to the problem here presented.

The case of De La Vergne Refrigerating Machine Company v. German Savings Institution, 175 U.S. 40, 20 S.Ct. 20, 44 L.Ed. 65, relied upon by appellants, involved the attempted enforcement against a corporation of an ultra vires contract. We are not here concerned with an ultra vires act, because the corporation had, under the statutes referred to, authority to make the transfer objected to. The only objection is to failure to conform to the procedural requirements of the statute.

Appellants also rely on Walters v. Larson, Mo.App., 270 S.W.2d 112. There a party to a contract for the sale of corporate assets was permitted to rescind the contract because the attempted transfer was not by the corporate owner of the property, but by the principal stockholder. Here, however, we do not find any objection that the Stills lacked authority to transfer the assets on behalf of the corporation or that the transfer was not, in fact, on behalf of the corporation.

We conclude that the appellants' objections to Watkins' asserted ownership of the property destroyed is not well founded and that Watkins did have an insurable interest in the property. 44 C.J.S. Insurance § 175, page 870; American Central Insurance Company v. Kirby, Mo.App., 294 S.W. 2d 556, 561.

The conclusion that Watkins had an insurable interest disposes of other grounds advanced by the appellants for the reversal of the trial court's judgment, with two ex-

ceptions. One relates to the admission of evidence on the trial. Still was asked about the negotiations leading to the issuance of the insurance policies. Over objection on the grounds that the testimony was hearsay, Still was permitted to testify that the insurance agent told him "he would go over and talk to Mr. Watkins and check the inventory and if everything was in accordance with the bill of sale and what I had told him, the policies would be issued." Watkins, over the objection that there was no showing that the agent was a general agent of the appellants, was permitted to testify that the agent told him he had "heard that the yard had changed hands and they wanted to write up the insurance on it." The objection here is that this evidence is hearsay because the employees of the insurance agency were not general agents of any of the appellants.

Testimony of a witness regarding the statement of another is hearsay and inadmissible only when the statement is offered as proof of the matters therein stated. Mash v. Missouri Pacific Railroad Co., Mo.Sup., 341 S.W.2d 822, 827. In neither of the instances to which the objection was made here was the statement of the agents offered as proof of matters contained in such statements. Bond v. Wabash Railroad Company, Mo.Sup., 363 S.W.2d 1, 5. Nor is the nature of the agency material. The statements were not offered as admissions of the appellants. There is no dispute that the insurance policies issued and the statements concerning which objection was made are not the basis of any estoppel against the appellants. Therefore, we find no error in their admission.

Appellants contend that the testimony of Still and Watkins as to the value of the goods lost should not have been admitted for the reason that it constituted opinion evidence for which no proper foundation had been laid. Still testified that he knew the value of building materials and lumber and that he was acquainted with the contents of the shed that were lost in the fire.

He stated that, although he had not been in the shed for possibly three weeks before the fire, he had been on the premises frequently and saw no significant increase or decrease in the contents of the building. He valued the contents of the shed at $12,500 to $12,800. He testified that he also arrived at the same figure by taking the August 1st financial statement of the business and the inventories shown thereon and by taking a physical inventory of the stock remaining after the fire.

Watkins testified that he ran the business at the time of the fire and that he knew the contents of the building that burned; that he had been in the shed the day before the fire and that the value of its contents was between $12,000 and $12,500. Both Watkins and Still testified that the contents were completely lost. No other evidence was produced relative to the value of the property destroyed.

We are of the opinion that the court properly admitted the testimony of both Still and Watkins. Still testified on the basis of his knowledge of the contents of the building and also on the basis of a physical inventory of the stock remaining after the fire. Watkins testified on the basis of his familiarity with the value of the stock of merchandise from his actual conduct of the business. While there may well be, as appellants suggest better ways to establish the value of a stock of merchandise than that here employed, we do not consider the evidence inadmissible or without probative value. Culver v. Williamsburg City Fire Ins. Co., 141 Mo.App. 205, 124 S.W. 540, 541; Miller v. Great American Insurance Company, Mo.App., 61 S.W.2d 205, 206.

Appellants object to the trial court's judgment in that it allows penalty and attorney's fee for vexatious delay. They contend that their liability was an open question of law which they had a right to have determined prior to the payment of the loss without imposition of the statutory (Section 375.420, RSMo 1959, V.A.M.S.) penalties. Appel-

lants cite State ex rel. Missouri State Life Ins. Co. v. Allen, 295 Mo. 307, 243 S.W. 839, and Rohlfing v. State Farm Fire and Casualty Company, Mo.App., 349 S.W.2d 472, as upholding their right to contest liability without the imposition of penalties.

Respondents assert that failure to pay the claim was vexatious and without reasonable cause. They point to the failure of the insurers to return or tender the return of the premiums paid, citing Lux v. Milwaukee Mechanics' Ins. Co., Mo.App., 30 S.W. 2d 1090, 1091, and Pauley v. Business Men's Assur. Co. of America, 217 Mo.App. 302, 261 S.W. 340. They also point out that, in their answers to interrogatories, the appellants all stated they first obtained knowledge that Steele Supply Co. was a corporation on December 2, 1960, but, in their answers to the next question, they stated that, when the insurance policies were written on January 20, 1960, the agents of appellants specifically asked Watkins whether or not the insurance should be "in the name of the corporation" and were expressly directed by him not to put the insurance "in the corporation's name." Inasmuch as no corporation other than Steele Supply Co. appears to have been involved, the agents, judging from the above answer, must have known the Steele Supply Co. was incorporated at the time the policies were written.

Although, as appellants state, an open question of law may preclude imposition of the penalties, that fact alone will not preclude the penalty where there is evidence the insurer's attitude was vexatious and recalcitrant. Lemay Ferry Bank v. New Amsterdam Casualty Co., 347 Mo. 793, 149 S.W.2d 328, 331. As respondents point out, failure to return the premiums paid, where the defense is lack of insurable interest, has been held to evidence bad faith on the part of the insurer. Lux v. Milwaukee Mechanics' Ins. Co., Pauley v. Business Men's Assur. Co., supra. Appellants here seek to avoid such effect being given their refusal on the grounds that they did not know to whom the premium should

be refunded. The evidence did show the premium was paid by a check on the Still Gin Company account. However, there is no evidence that any effort was made to ascertain to whom the premiums might be returned or that the failure to return them was in any manner based upon such lack of information.

In addition, we have concluded that recovery should be allowed here on the basis of Watkins' assignment of his claims under the policies. Such assignment could include his claim for penalties for vexatious delay (Lehmann v. Hartford Fire Ins. Co., 183 Mo.App. 696, 167 S.W. 1047, 1049; Bergerson v. General Ins. Co., 235 Mo.App. 806, 148 S.W.2d 812, 820) and no objection has been made that the assignment here did not include Watkins' claim in that regard. Insofar as Watkins is concerned, the appellants, in denying liability, gave no reason whatsoever. Failure to assign a reason for refusing to pay a claim may evidence vexatiousness and lack of good faith. Saffran v. Rhode Island Ins. Co., Mo.App., 141 S.W.2d 98; Bennett v. National Fire Ins. Co. of Hartford, 235 Mo.App. 720, 143 S.W.2d 479, 482.

Here the loss occurred on August 9, 1960. Although proof of loss was not made until September 26, 1960, appellants' answers to interrogatories disclose that two adjusters on behalf of the appellants and a special agent of the National Board of Fire Underwriters conducted an investigation of the loss for ten days from August 10 to August 20. Since the refusal to pay the policies was based, according to the appellants' answers, upon a lack of insurable interest which appellants claim to have discovered on December 2, the investigators must have discovered in their 10-day investigation no substantial basis for refusal to pay the loss. In view of appellants' failure to inform Watkins of the reason for their refusal and in the absence of any evidence on behalf of the appellants, the court might reasonably have concluded that, at the time of the refusal, the appellants were

still seeking a basis for refusal and finding none other finally, in litigation, relied upon the lack of insurable interest. Buffalo Insurance Company v. Bommarito, 8th Cir., 42 F.2d 53, 70 A.L.R. 1211. The trial court properly found that appellants' refusal to pay was vexatious. Civil Rule 73.01, V.A.M.R.

The judgment of the trial court is affirmed.

COIL and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by WELBORN, C., is adopted as the opinion of the Court.

All of the Judges concur.